SAMUEL KIRK & SON AND OTHERS *vs.* WILMER H. GARRETT, BY HIS FATHER AND NEXT FRIEND, SAML. H. GARRETT.

*False Imprisonment—What Constitutes Unlawful Detention—Arrest by Constable Without Warrant—Reasonable Ground of Suspicion a Question for the Court—Taking Person Arrested Before a Magistrate—Liability of one Partner for Tort of Another—Evidence— Admission of Party Against Interest—Testimony of a Grand Juror—Larceny.*

An employee of a silversmith who carries away silver spoons, the property of his employer, with intent to appropriate the same, upon leaving with a fellow workman raw silver, equal in weight but not the equivalent in value of the manufactured articles, is guilty of larceny.

No action of false imprisonment lies unless the arrest and detention of the plaintiff were unlawful.

False imprisonment consists in the unlawful detention of one against his will. Where the person of his own free volition remains where he is, though at liberty to depart if he pleases, he is not imprisoned at all.

A constable is authorized to arrest without warrant a person whom he suspects, upon reasonable grounds, either by his own knowledge or from information given by others, to be guilty of a felony, and such person may be detained until he can be carried before a magistrate.

What amounts to a sufficient ground of suspicion to justify an arrest by a constable without warrant, is for the Court and not for the jury to determine.

When a constable is informed by a silversmith that thefts are being committed by his employees and arrests the plaintiff after twice seeing him come from the silversmith's shop with articles concealed in his pockets, and finds what the plaintiff admits to be the property of the silversmith in the plaintiff's possession, there is not only reasonable ground for the arrest but clear proof of the plaintiff's guilt.

When a person is arrested, either with or without warrant, it is the duty of the officer or other person making the arrest to carry the prisoner without unnecessary delay before a magistrate.

If the officer detains the accused in custody an unreasonable length of time without taking him before a magistrate, he is guilty of a false

imprisonment, no matter how lawful the original arrest may have been.

Plaintiff was lawfully arrested by a constable upon a charge of larceny from some of the defendants, his employers. In an action for false imprisonment he testified that the defendants detained him at a hotel for two days, against his will, until he appeared before the grand jury to give evidence against his fellow workmen, charged with similar larcenies. Three of the defendants testified that at the time of his arrest, the plaintiff besought them out to prosecute him and declared his willingness to go to a hotel and there remain with two of the defendants, who were detectives, until he could appear before the grand jury, when he promised to give evidence showing the guilt of some of his fellow workmen. The plaintiff did spend two nights at hotels with the detectives, and subsequently testified before the grand jury and was not prosecuted. *Held,*

1st. That in view of the conflict of evidence as to whether the plaintiff remained at the hotels of his own free will or not, the jury could not be instructed that there was no evidence legally sufficient to entitle the plaintiff to recover, because, if his evidence was accepted as true, his detention was unlawful.

2nd. That if the jury believed the defendants' evidence to be true, then the plaintiff was not detained against his will and he was not entitled to recover.

One partner is not liable jointly with another for a tort committed by the latter, without previous authority or subsequent ratification of the act by the former; when the firm is merely the occasion for the partner's tort but not the agency in its commission.

 When the arrest and imprisonment of a person, charged with larceny of the firm's property, is ordered by one member of the firm, another partner who knew nothing about the matter beforehand and did not ratify it afterwards, is not liable in an action for false imprisonment.

In an action for the false imprisonment of a party charged with larceny from his employer, evidence relating to thefts committed by other employees is not admissible, nor is evidence admissible relating to indictments found against other employees.

In such action a prayer that leaves it to the jury to determine whether the arrest and detention of the plaintiff was lawful or not, is erroneous, because it is for the Court to say whether a given state of facts, if found by the jury, is sufficient to justify an arrest, and whether the subsequent detention of the plaintiff is or is not unreasonable.

In this case, where the evidence of the defendants was that the plaintiff was not prosecuted for larceny because he agreed to give evidence against his coemployees and that he voluntarily remained with

the detectives until he could go before the grand jury, the plaintiff testified that he had not given such evidence before the grand jury and that he did not voluntarily remain in custody. *Held*, that it was competent to prove by the testimony of a grand juror what the evidence of the plaintiff before the grand jury actually was, both for the purpose of contradicting the plaintiff and also to show that he remained voluntarily in custody.

The admissions of a party to the cause adverse to his right to recover, may be shown, without first questioning him concerning them.

A grand juror may be called to prove that the testimony of a witness in the grand jury room is different from his testimony before the petit jury, and this is no violation of the grand juror's oath of secrecy. And the fact that the party calling the grand juror does not know what his testimony will be is no ground for excluding the evidence.

Appeal from the Superior Court of Baltimore City. At the trial the plaintiff offered the following prayers :

*First.*—If W. H. Garrett was arrested and detained against his will for two days in the custody of Hardesty and Miller, as testified to by the plaintiff, and there were no circumstances in the transaction, out of which the arrest and detention arose, to induce a reasonable and dispassionate man to make such arrest and detention, then the plaintiff is entitled to recover against Hardesty and Miller. (Granted).

*Second.*—If the jury find for the plaintiff under the first instruction, and find that H. C. Kirk and H. C. Kirk, Jr., were copartners, &c., and that the latter, at the instance of the former, and in the course of business of the firm, &c., employed Hardesty and Miller to act on behalf of the firm in the matter of the alleged stolen silver, and that the said arrest was made known to H. C. Kirk, Jr., and was approved by him, and that he participated in said detention, then the plaintiff is also entitled to recover against each of said partners. (Granted as modified).

*Third.*—The jury may award such damages as will not only compensate the plaintiff for the wrong and indignity he has sustained in consequence of the defendant's wrongful acts, but they may also award exemplary or punitive damages, as a punishment to the defendants for such acts. (Granted).

The defendants offered the following prayers:

*Defendants' 1st Prayer.*—The defendants pray the Court to instruct the jury that there is no evidence offered in this case sufficient, in point of law, to maintain the issues joined on the part of the plaintiff, and therefore the jury must find for the defendants.   (Rejected).

*Defendant's 2nd Prayer.*—That there is no evidence before them sufficient in point of law to maintain the issues joined on the part of the plaintiff, as against the firm of Samuel Kirk & Sons, or Henry C. Kirk, Senior, respectively, and therefore, as to said defendants, their verdict must be for the said named defendants.   (Rejected).

*Defendants' 3d Prayer.*—That if the jury find from the evidence in this case that the defendant, Henry C. Kirk, Junior, in July, 1894, upon information, examined the stock of the firm of Samuel Kirk & Sons, of which he was a partner, and became convinced that a systematic wrongful taking of their property had been going on in the factory for some time, employed Hardesty & Miller, private detectives, to watch the premises, and to discover, if possible, who were the guilty parties; and shall find that Miller, another of the defendants, observed the plaintiff coming from the factory of Samuel Kirk & Sons, where he was employed, on the afternoon of July 31, 1894, and that said Miller saw, from the appearance of the plaintiff's coat, that something was concealed thereunder, and upon following noticed that he gave a package to another fellow-workman at the corner of Fayette and Saint Paul streets; and shall further find that on the next day, that is, on the 1st August, 1894, in the afternoon, he again saw the plaintiff coming from the factory of said Samuel Kirk & Sons apparently with a like package under his coat as upon the preceding day; and shall find that the said Miller had previously communicated to the said Hardesty the occurrence between the said plaintiff and the said fellow-workman at the corner of Saint Paul and Fayette streets, and his suspicion that the goods of the said Samuel Kirk & Sons were thus being

taken away ; and shall find that said Miller, on this 1st day of August, 1894, attracted the attention of said Hardesty to said plaintiff as he was passing up Saint Paul street and leaving the factory as aforesaid, upon a bicycle, and that said Hardesty, being a duly commissioned constable, without warrant arrested said plaintiff and went with him to the said Hardesty's office, and being charged with the possession of silver spoons of the said firm of Samuel Kirk & Sons ; and shall find further that the plaintiff confessed he had such silver spoons, and produced the six silver tablespoons offered in evidence, and shall find that they were manufactured out of silver belonging to Samuel Kirk & Sons, by a workman employed and paid by Samuel Kirk & Sons, and that they were stamped with the name of Samuel Kirk & Sons, then the arrest of the plaintiff by said Hardesty was lawful, he having reasonable cause for such arrest ; and if the jury shall further find that the said Hardesty was about to take the plaintiff to the station house and make the charge of larceny against him, when the said plaintiff begged not to be taken to the station-house, for fear the matter would be made public and it would kill his invalid mother, and appealed to Henry C. Kirk, Junior, to allow him to give evidence against other employees of the said Samuel Kirk & Sons and go before the grand jury therefor, and in the meantime proposed that he would stay at a hotel until he could give his testimony before the grand jury against the persons whom he charged as taking the goods of Samuel Kirk & Sons ; and that he did so testify before the grand jury and went to his home thereafter, and that indictments were found against said parties, and that he testified as a State's witness against them on their trial, that because of his confession and testimony before the grand jury he was not prosecuted, then said detention, being at his own request and with his own consent, was not unlawful, and the plaintiff is not entitled to recover in this action against any of the defendants.   (Rejected).

*Defendants' 4th Prayer.*—That if the jury find from the

evidence in this case that the defendant, Henry C. Kirk, Junior, upon information given to him in July, 1894, examined the stock of the firm of Samuel Kirk & Sons, of which firm he was a partner, and on such examination became convinced that a systematic wrongful taking of their property had been going on for some time, employed Hardesty & Miller, private detectives, to watch the premises and to discover, if possible, who were the guilty parties; and shall find that Miller, another of the defendants, observed the plaintiff coming from the factory of Samuel Kirk & Sons, where he was employed, on the afternoon of July 31, 1894, and that said Miller saw from the appearance of the plaintiff's coat that something was concealed thereunder, and upon following him noticed that he gave a package, taken from the inside of his coat, to another fellow-workman, at the corner of Fayette and St. Paul streets; and shall further find that on the next day, that is, on the afternoon of the 1st of August, 1894, he again saw the plaintiff coming from the factory of said Samuel Kirk & Sons, apparently with a like package under his coat as upon the preceding day; and shall further find that said Miller had previously communicated to the said Hardesty, his partner, the occurrence between the said plaintiff and the said fellow-workmen, at the corner of Saint Paul and Fayette streets, and his suspicion that the goods of the said Samuel Kirk & Sons were thus being taken away; and shall further find that said Miller, on the said 1st day of August, 1894, attracted the attention of the said Hardesty, who was standing on Saint Paul street, near Fayette, to the plaintiff, as he was passing in the same direction, leaving the factory as aforesaid on a bicycle; and that said Hardesty being a duly commissioned constable, if they so find, then without warrant arrested said plaintiff and went with him to said Hardesty's, and being there charged with the wrongful possession of silver spoons, taken clandestinely from the factory of said Samuel Kirk & Sons; and shall further find that the plaintiff confessed that he had said silver spoons and produced them from his in-

side coat pocket, and delivered to said Hardesty the six sil-
ver spoons offered in evidence ; and shall find that they
were manufactured out of silver belonging to Samuel Kirk
& Sons, by a workman in the factory of Samuel Kirk &
Sons, employed and paid by Samuel Kirk & Sons, and
stamped with the name of Samuel Kirk & Sons, then the
arrest of the plaintiff by said Hardesty was made upon rea-
sonable cause and was lawful.

And if the jury shall further find that the said Hardesty
was about to take the plaintiff to the station-house and make
the charge of larceny against him, and that the plaintiff then
begged him not to take him to the station-house for fear
the matter would be made public, and it would kill his in-
valid mother, and appealed to the said Miller and Kirk, the
other defendants, not to let him be so taken to the station-
house, but to allow him to give evidence against other par-
ties, employees of the said Samuel Kirk & Sons, and go
before the grand jury for that purpose, and in the meantime
proposed that they should take him to a hotel where he
would remain with said Hardesty and Miller until he had
testified before the grand jury, and that he remained at
Brawner's Hotel one night and at the Imperial Hotel the
second night, and on the next day went before the grand
jury and testified before the grand jury against the parties
he had accused and then left for his home ; and shall fur-
ther find that while he was at Brawner's Hotel he left the
said Hardesty and Miller in the upper rooms of the hotel
and went down to the lower floor for cigars ; that he went
into the toilet-room and bath-room without interference or
being accompanied by either of the said defendants, and that
he subsequently testified in the Criminal Court of Baltimore
against the said parties whom he had accused, if they shall
so find ; and shall find that by reason of such conduct of
the plaintiff in confessing and giving information against the
other parties accused by him, he was not prosecuted, such
detention of the plaintiff at the hotels, if the jury find such
detention, it was for a reasonable time, until he could give

evidence before the grand jury, and the plaintiff is not entitled to recover in this action.    (Rejected).

*Defendants' 5th Prayer.*—That if the jury find that while the plaintiff was with Hardesty & Miller at Brawner's Hotel, on the first night of his arrest, as testified in the case, he went down alone to the floor of the hotel next to the street, while the defendants, Hardesty and Miller, were in the upper rooms, and could have gone away from the hotel, his subsequent return to the upper rooms and remaining there was not against his will, and the plaintiff is not entitled to recover.    (Rejected).

The Court below (RITCHIE, J.), granted all of the plaintiff's prayers, and rejected all of the defendants' prayers. The jury returned a verdict for the plaintiff for $1,700.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE and BOYD, JJ.

*Wm. Pinkney Whyte*, for the appellant.

The case should have been taken from the jury upon the plaintiff's testimony.    BLACKSTONE says, " to constitute the injury of false imprisonment, there are two points requisite : 1. The detention of the person.    2. The unlawfulnes of the detention."    *Chitty's Blackstone*, book 3, star page 125. The very essence of the suit for false imprisonment is the illegal arrest.    If the evidence produced by the plaintiff be legally insufficient to be submitted to the jury to prove both of these elements of the plaintiff's case, his action can well be pronounced groundless, and the defendants not be called on for their defence.    *Boyd* v. *Cross*, 35 Md. 196.

The detention must be a pure, naked, unlawful detention. The unlawfulness is the gravamen of the offence.    Was the arrest unlawful ?    An officer may without warrant arrest on reasonable suspicion of felony, even though a felony has not in fact been committed, whereas a private person so arresting, or causing to be arrested, an alleged offender, must

show not only that he had reasonable grounds of suspicion, but that a felony had actually been committed. *4th Ed. Pollock on Torts,* 204; *B. & O. R. R. Co.* v *Cain,* 81 Md. 100. An officer, however, *having reasonable ground to suspect that a felony has been committed,* may arrest and detain the felon. *Note 2 to 3d Greenl. on Ev.,* 14th ed., section 123; *Neal* v. *Joyner,* 89 N. C. 290.

Just as "probable cause," in a case for malicious prosecution is a question of law for the Court, so, also, is "what is reasonable suspicion" in false imprisonment cases, a question of law for the Court. *4th Ed. Pollock on Torts,* 207. Here there was no question of fact to be found by a jury; for on this point all the testimony of the plaintiff is assumed to be true, and the inquiry plain and simple. It was admitted by the plaintiff, that on the day before his arrest, after leaving the factory, he took from the inside pocket of his coat half a dozen silver table spoons, and gave them to a fellow workman to engrave for him. That he wanted to give them to his fellow workman in the shop, where they were at work, but the latter *refused to take them there;* but that they walked together from the factory and he delivered them to his co-employee at the corner of Saint Paul and Fayette streets. This was seen, and, on the next day, August 1, 1894, he took from the factory six silver table spoons, stamped "Samuel Kirk & Sons;" that he had them in his inside coat pocket, and that he was stopped by the constable, with the other detective; the first of whom showed him his badge, and when, at their office, they demanded to know if he had not some spoons on his person—and he produced the six silver table spoons and delivered them to the officer. It was admitted by him that the said six silver table spoons found on him were made out of Kirk's silver, but he gave the equivalent in weight for them, "that is, he had bought some old broken spoons and gave an equal amount *in weight* for the made-up silver spoons."

It will be perceived that he admitted that the spoons

found on him were' made of Kirk's silver; that he took them in his inside coat pocket from the factory; that he gave weight, equal in amount to the weight of the spoons, without any consideration for the labor expended on them, or for the profit, to which Kirk & Sons were entitled. That this was done without his telling Mr. Kirk of it. That this constituted larceny can hardly be open to disputation. Larceny, at the common law, is the taking and carrying away by trespass of personal property, which the trespasser knows to belong, either generally or specially, to another, with intent to deprive such owner permanently of his property therein. 2 *Bishop's Crim. Law*, section 758; *Clark's Cr. Law*, 241. The wrongful or fraudulent taking and carrying away, by any person, of the mere personal goods of another, from any place, with a felonious intent, to convert them to his (the taker's) use, and make them his own property. 2 *East, Pleas*, c. 553; *Worthington* v. *State*, 58 Md. 409. The felonious quality consists in the intention of the prisoner to defraud the owner, and apply the thing stolen to his own use. 2 *Starkie on Ev.*, 607.

If the party have bare charge of the goods under the immediate control and superintendence of the owner, he may be guilty of larceny in taking them. *State* v. *White*, 2 Tyler, 352; East, P. C. 554; 1 Hale, 506; 1 Hawk, 33; *Bass' case; Leach's Crown Law*, 242. The criminal intent is what distinguishes larceny from trespass. The fact that the property is taken *clandestinely*, or that there is an attempt to conceal it, is evidence of a felonious intent. *Long* v. *State*, 11 Florida, 295. JUDGE HARLAN decided in *Keelan's case*, in which the facts were similar (that is, the taking of Kirk's spoons and leaving what the accused called an equivalent in weight, without the knowledge of Kirk), was larceny, and Keelan was convicted in the Criminal Court of Baltimore. It is contended that the arrest was lawful.

Was the detention unreasonable? The sole object of keeping Garrett was explained by Garrett himself. He had made charges against five of his co-employees; he had spe-

cifically stated what they had taken from Kirk's. He had detailed it to Kirk, who took down his statements and he signed them. He assured Kirk that such would be his testimony before the grand jury, and in order to prevent the accused parties getting knowledge of these accusations prior to the action of the grand jury he remained at the hotels for two nights. " Kirk told me they would keep me at the hotel at night, because he was afraid that I would see these parties before criminal action was taken against them." " The object of keeping the witness was to prevent my telling the men."

This detention was in the interest of public justice, and was not unreasonable under the circumstances. His own prosecution was abandoned, on the ground that he had confessed what the employees of Kirk had been doing, and thus he had turned State's evidence. The detention was reasonable, in order that he might be examined by the grand jury on the next day after his arrest. *Knight* v. *International & G. N. R. Co.*, 9 U. S., C. C. A. 380. He admits there was no violence used towards him and no malice proved. This being the case, the Court should have taken the case from the jury, upon the defendants' prayer, at the close of plaintiff's testimony. *Mitchell* v. *Lemon*, 34 Md. 180.

The testimony of W. W. Dix, the grand juror, who was one of the body that had found the indictments against Keelan and others, upon the testimony of the equitable plaintiff, should have been allowed to go to the jury to impeach and contradict the equitable plaintiff in his statement, " that he told the grand jury, I could not say positively, that any of the men were stealing, but I knew they had some things made the same as I had, and I think they furnished the silver." The presumption was that he had sworn positively to the larceny as against his co-employees, in accordance with his statements to Kirk, which he had signed and which were in existence at the time of the trial, but, as the secrecy of the grand jury room was not broken

to the counsel of the defendants, he informed the Court he
did not know what the witness would testify to, so that the
defendants were entitled to have the testimony in the in-
terest of truth, which ever way it was.    Since the decision
of the case of *Izer* v. *State of Maryland*, 77 Md. 110, it is
contended that the matter of calling a grand juror to im-
peach a witness who has testified before that body, when
the reason for secrecy has passed, is not open to disputation.

In the case of *Burdick* v. *Hunt and others*, 43 Indiana,
381, it was said : " It has been more than once decided by
this Court that the oath of grand jurors to keep their pro-
ceedings secret does not prevent the public or an individual
proving by one of the grand jurors *in a Court of Justice*
what passed before the grand jury.    *Burnham* v. *Hatfield*,
5 Blackford, 21 ; *Shattuck* v. *State*, 11 Ind. 473." Grand
jurors may testify as to what a witness testified to before
them, and to all matters which *public policy* does not re-
quire to be kept secret.    *Com.* v. *Mead*, 12 Gray (Mass.)
166.

The plaintiff's 1st and 2d prayers should not have been
granted.   So, also, it was error to reject the defendant's
second, third and fourth prayers.  The second prayer raised
the question whether the firm of Sam'l Kirk & Sons or
Henry C. Kirk, Senior, could be held liable for the action
of Henry C. Kirk, Junior, when, according to the evidence,
Henry C. Kirk, Senior, had no part or lot in, nor knew of
the arrest or detention of the equitable plaintiff, until after
his return to his home.    Mr. Collyer, in his work on *Part-
nership*, section 457, says : " A learned writer observes that
though partners are, in general, bound by the contracts,
they are not answerable for the wrongs of each other.    In
general, acts or omissions in the course of the partnership
trade or business, in violation of law, will, only, implicate
those who are guilty of them."    And in 1 *Lindley on Part-
nership*, book 2, chapter 1, section 4, the author says : "As
a rule, however, the wilful tort of one partner is not im-
putable to the firm.    For example, if one partner malici-

ously prosecutes a person for stealing partnership property, the firm is not answerable, unless all the members are *in fact* privy to the malicious prosecution." In *Grund* v. *Van Vleck*, 69 Ill. 478, where a question arose as to the liability of one partner for the act of another in causing the arrest of a person, charged with larceny of money belonging to the firm, it was held, that mere knowledge or consent of one partner, that the other should have the person accused arrested, would not render the partner so knowing and consenting liable to an action for malicious prosecution." "It is necessary that the consent should be of such a character, as to amount to advice and co-operation." See also *Rosenkrans* v. *Barker*, 115 Ill. 331.

The third prayer raised the question whether, if the jury found from the evidence that the equitable plaintiff proposed himself to go to a hotel, if they did not take him to the station-house for examination, and to remain until he could go before the grand jury and give his testimony against the accused, did not release the defendants from all legal responsibility for his detention. If the detention was at his request, no action lies, and this was a matter which should have been submitted to the jury. *Twilly* v. *Perkins*, 77 Md. 265.

The defendants' fourth prayer should not have been rejected. When a party is arrested for a crime and then discloses a general combination of employees who had been committing the crime of larceny for some time, and volunteers to furnish the testimony for their conviction, and it is necessary to have secrecy in regard to those inculpated, so that the legal machinery may be put in motion before they have knowledge thereof, it is not unreasonable to hold the party, who has turned State's evidence, for two days, that proper steps may be taken for the arrest of the accused before they are informed of the legal proceedings. It was error to reject the defendants' fifth prayer, for if it was true, as testified to, that, while at Brawner's Hotel, on the evening of the arrest, the plaintiff went from the upper rooms

alone, down to the cigar stand on the lower floor, and could have walked out of the hotel and gone home; but, on the contrary, voluntarily returned to the upper rooms and remained with Hardesty and Miller until he had done all he could, such detention was not against his will, and the prayer should have been granted.

*D. Eldridge Monroe* and *Thomas C. Weeks*, for the appellee.

The plaintiff proved the copartnersnip existing August 1st, 1894, between Henry C. Kirk and Henry C. Kirk, Jr. He also proved his arrest on the public highway and his detention at the office of Hardesty & Miller; the threats made against witness to send him to the penitentiary; the denial of any theft; his begging the defendants to permit him to return to his home, and their refusal; his detention at Brawner's Hotel, against his will, during the night, with the door of his room locked; his detention, against his will, at the office of the defendants, Hardesty and Miller, on the following morning; his detention at the Imperial Hotel all night against his will, watched by said detectives, and his further detention the following day; the fact that no warrant was issued for his arrest; that he was never taken before a justice of the peace, or charged with any offence. Further evidence was given by several witnesses tending to prove the issues on behalf of the plaintiff, and the plaintiff closed his case.

The second exception of the appellants is to the refusal of the Court to admit evidence as to what became of a certain half dozen teaspoons which the witness, Miller, testified he had discovered were missing from Kirk's establishment. This evidence was clearly irrelevant. The issue was whether or not the defendants had been guilty of the charge of the false imprisonment of the plaintiff. This evidence was not offered in justification of the arrest, as, under the pleading, it could not be so offered. It could not avail in mitigation of damages, as evidence that *another*

*party* had been indicted for the theft of these teaspoons, if true, could by no possible inference afford a reasonable conclusion that the plaintiff was guilty of the theft, and therefore warrant his arrest. Moreover, no evidence was offered, or proposed to be offered, to show that the equitable plaintiff was arrested because of the alleged theft of these teaspoons, or that there were any facts which directly or indirectly pointed to him as the guilty party. " Remote or collateral facts and circumstances not pertinent or relevant to the issues to be tried are inadmissible in evidence." *Davis* v. *Calvert*, 5 G. & J. 269 ; *Bloomer* v. *State*, 48 Md. 528.

The third exception is taken to the refusal of the Court to permit the witness Dix, who had been a grand juror at the time Wilmer H. Garrett had testified before that body, to answer the following question : " What did Garrett testify to before the grand jury as to the charges against these men ? " The defendant's counsel admitted, in answer to a question by the Court, that he did not know what the witness would testify to. The offer was made generally " with the expectation of contradicting and impeaching the testimony of Wilmer H. Garrett, but without any statement to the Court as to what he expected to prove by the witness." The rule governing the admission of evidence of this character has been clearly stated in a recent opinion by this Court as follows : " The authority which, to promote the *public welfare*, has imposed upon grand jurors the obligation of secrecy, may, when the *same public welfare* requires it, dispense with its observance. The law, for wise reasons, has imposed upon grand jurors the obligation of secrecy, and for equally wise reasons, it has, in certain cases, but only upon its own express command and within clearly defined limits, dispensed with the literal observance of the obligation. * * The grand juror's oath of secrecy cannot, therefore, be interposed to obstruct the *administration of justice—it cannot be made to defeat the punishment of crime.*" *Izer* v. *State*, 77 Md. 111–113.

"The obligation of secrecy imposed upon grand jurors is due to the public rather than to the witnesses who testify before them, and when justice requires it, *as in a prosecution for perjury committed before the grand jury*, they may be called as witnesses to prove who testified before them and what testimony was given." *A. & E. Ency. Law*, vol. 29, page 608, and cases there cited. The rule as to the obligation of secrecy is only relaxed when the ends of public justice require it. A grand juror cannot be admitted to prove that a witness who had been examined swore differently before the grand jury. *Imlay* v. *Rogers*, 7 N. J. L. 347. This Court has been careful to restrict the limits within which a grand juror may be called upon to testify as to what occurred in the grand jury room. The grand juror may testify that a prosecution was ended by the case being dismissed by them, but cannot be required to testify *why* it was ended. *Owens* v. *Owens*, 81 Md. 522. The juror will not be permitted to state how any member voted, or the opinion expressed by his fellows or himself, or the individual action of any juror in regard to the subject-matter before them. *Elbin et al.* v. *Wilson*, 33 Md. 144.

The offer, under any circumstances, was too general. The question objected to was : " *What did Garrett testify to before the grand jury as to the charges against these men ?* " Whereupon the Court inquired of counsel for the defendant, " *If he knew what the witness would testify to,*" and the counsel replied *he did not.* The witness was not called to contradict any specific statement to which his (Garrett's) attention had been directed by the counsel on cross-examination, nor was he called to contradict or impeach Garrett's testimony, but with the *expectation or probability* that, if allowed to testify generally of all that had been stated in the grand jury room, the witness might say something contradictory of Garrett's testimony in chief. The counsel for defendants made no statement to the Court as to what he *expected to prove* by this witness. He had laid no foundation for impeaching Garrett's testimony. *Kreite* v. *Myer &*

*Co.,* 61 Md. 568–69; *Greenleaf Ev.,* vol. I, sec. 462, 15th ed. ; *Higgins* v. *Carlton,* 28 Md. 138–39.  For another reason the inquiry was not relevant to the issue.  It is a well-known rule that " it is only in such matters as are relevant to the issue that the witness can be contradicted."

The indictments offered in evidence by the defendants were clearly inadmissible.  These indictments could neither prove nor tend to prove any issue raised by the pleadings. Their only effect, if admitted in evidence, would have been to prejudice, confuse or mislead the jury in making up their verdict.  The counsel for the defendants did not state for what purpose they were offered.  It can only be inferred, therefore, that if there was any definite purpose in the offer it was intended to show that because certain persons against whom the equitable plaintiff had testified had been indicted, the indictments tended to prove that there was reasonable ground for the arrest of the plaintiff without warrant, and his detention during two days and two nights without preferring any charge against him before a committing magistrate.  Such a contention would be so utterly in conflict with the rules of evidence as to exclude it from serious consideration.  Such facts are " incapable of affording any reasonable presumption or inference as to the principal matter in dispute," and were, therefore, properly rejected. *Greenleaf,* I, secs. 51–53 ; *Bloomer* v. *State,* 48 Md. 521 ; *Lee* v. *Tinges,* 7 Md. 215.

The prayers granted on behalf of the plaintiff gave the defendants the full benefit of every defence that could, under the widest latitude as to the admission of evidence, be made. It was contended below by the plaintiff, and is, we believe, a proper subject of discussion in this Court, that evidence of probable cause, even in mitigation of damages, was not admissible in this case, *where there was no warrant for the arrest and no charge preferred against the party arrested before a committing magistrate.*  The first prayer of the plaintiff makes it necessary for the jury to find that there was no probable cause, as defined by the prayer, in order

to entitle the plaintiff to recover. The defendants had the benefit of a most liberal interpretation of the law in their favor. This Court held in *Lewin* v. *Uzuber*, 65 Md. 341, referring with approval to *Hubbard* v. *Lord*, 59 Texas Rep. 384, that in actions of trespass for false imprisonment "probable cause may go in mitigation of damages, though not in bar of the action." In all the cases maintaining this proposition, the correctness of which is not disputed, the arrest contemplated is one which is made from *public motives*. The defendant must be actuated by a regard to the public welfare in contradistinction to private ends. *McWilliams* v. *Hoban*, 42 Md. 61–2.

It is, therefore, clear that, unless the arrest is made for the purpose of bringing the accused party into obedience to the law, and upon facts and under circumstances that would warrant a cautious man in the belief that the person accused is guilty *of the offence* of which *he is charged*, evidence of probable cause cannot be offered even in mitigation of damages. There must be the public motive and a *charge of an offence* made, upon reasonable grounds of belief, that the party *charged is guilty*. *In this case there was no warrant, and there was no charge of an offence made before a committing magistrate, although the plaintiff, Garrett, was in the detention of the defendants two days and two nights.* Evidence offered, presumably, by the defendants, to show probable cause, was admitted by the Court below, and the first prayer of the plaintiff, as to probable cause, is based upon the evidence so admitted. This Court has said that, in the case of an arrest by an officer without warrant, it is the duty of the officer to at once take the accused before a justice of the peace to be dealt with according to law. *Twilley* v. *Parkins*, 77 Md. 265. This is the well-established rule: "His (the officer's) duty is to take him, to safely keep him and to bring his body before a magistrate." *Newell*, M. P. 73, sec. 14. The arrest is for the purpose of conveying before a magistrate and having the *charge duly made and examined*." *Ency L.*, vol. 7, p. 676 ; *Mitchell* v. *Lemmon*, 34 Md. 181.

There is nowhere in the evidence in this case anything to show that at any time there was a serious purpose on the part of the defendants to take the plaintiff before a committing magistrate for examination and charge him with an offence. Their whole course, from the beginning to the end, conclusively negatives the idea of an arrest and detention made from public motives. It was a bald, bold, reckless arrest and imprisonment, the only object of which was, as far as the evidence discloses, the coercion of the plaintiff into subserviency to the private ends of the defendants. Moreover, " it is a peculiarity of this particular form of trespass to the person—*false imprisonment*, literally so-called— that it does not consist in a single act, but in a prolonged or continuous violation of personal liberty." *Hilliard Torts*, vol. 1, page 200, section 7. In this case the arrest was made at about half-past four o'clock on the afternoon of 1st of August, 1894, and the detention of the plaintiff continued until about six o'clock on the afternoon of the 3d, a period of about fifty hours.

The first prayer of the plaintiff requires the jury to find, in order to entitle him to recover, not only that the arrest was without probable cause, but that the arrest *and detention* of the equitable plaintiff were without probable cause, as defined in said prayer. It is submitted that this correctly and fairly submits the case to the jury under the evidence, and is indeed a more liberal instruction in favor of the defendants than, under a strict application of the rules of evidence, they would have been entitled to.

The second prayer of the plaintiff, as modified by the Court, instructs the jury what facts it is necessary for them to find in order to recover against the senior partner, Henry C. Kirk, and correctly states the law as laid down by this Court. *Doremus* v. *McCormick*, 7 Gill, 64; *Stockton* v. *Frey*, 4 Gill, 407–422; 5 *Waits*, A. & D., 106 and 107; 1 *Bates, Partnership*, section 461.

The copartnership was proved; Kirk, Senior's, evident knowledge of the arrest; the employment of detectives was

with the full knowledge and co-operation of Henry C. Kirk, who, under the impression that certain of the firm's goods were being stolen, took this means to stop it; the employment of the detectives was on the recommendation and at the *instance* of Henry C. Kirk. The third prayer of plaintiff on the measure of damages has already been passed upon by this Court and approved. *Stansbury* v. *Fogle*, 37 Md. 382.

McSHERRY, C. J., delivered the opinion of the Court.

This is an action of trespass for assault and false imprisonment. There are five bills of exception in the record. Two relate to rulings of the Superior Court on prayers for instructions to the jury and three to the admissibility of proffered, but rejected evidence. About some of the facts there is dispute and conflict. To these facts reference will be made as we proceed. They have relation to the ruling in the first, and to some of the rulings in the fifth bill of exceptions. The uncontroverted facts, that are material to an intelligent presentation of the questions involved in all the rulings complained of, may be concisely summarized from the record without quoting extensively or literally from its pages.

Two of the defendants, Henry C. Kirk and Henry C. Kirk, Jr., constitute the firm of Samuel Kirk & Son, manufacturers and dealers in silverware. The equitable plaintiff, a youth of some seventeen or eighteen years of age, was one of their employees, and his duty was to polish the finished work. The other two defendants, Miller and Hardesty, were members of a detective agency; one of them, Hardesty, being a constable. The Messrs. Kirk discovering that they were being subjected to repeated losses by larcenies believed to have been committed by persons in their service, the junior member of the firm engaged Miller and Hardesty to investigate and to ascertain, if possible, the culprits. On the last day of July, 1894, the equitable plaintiff took from the shop of Kirk & Son a half dozen silver tablespoons concealed in his pocket, and on the corner of

Saint Paul and Fayette streets handed them to a co-employee to be engraved, the engraver having previously refused to take them from the plaintiff whilst in the defendants' shop. The detectives saw the plaintiff leave the shop with something hidden in the inside pocket of his coat, and they also saw him give the package to the engraver on the street corner. The next day the plaintiff on leaving the shop again took with him six tablespoons, which he carried, as before, in the inside pocket of his coat. As he proceeded up the street on his bicycle he heard a whistle, and on looking around saw Hardesty, who motioned to him to stop. He did stop and Hardesty went up to him, showed his badge as a constable and requested the equitable plaintiff to accompany him to his, Hardesty's office. Thereupon Miller joined them and the three walked to the office of Miller and Hardesty, not far distant. When they reached there and entered with the plaintiff, they locked the door and then asked him whether he had any spoons in his possession. He replied that he had and produced a half dozen tablespoons from his inside pocket; whereupon the detectives charged him with having stolen them, which charge he denied and claimed that, though the spoons were stamped with the name of Samuel Kirk & Son, and were Kirk's silver, he had exchanged for them, without the knowledge of his employers, an equal amount in weight of old silver. Mr. Kirk, Junior, was then sent for, and upon his arrival made inquiries as to whether other employees had been guilty of stealing, and the plaintiff, according to one of his versions of the interview, informed Mr. Kirk that five others had exchanged old silver for manufactured silver, just as the plaintiff said he had done; but according to the version of the interview given by Mr. Kirk and by Mr. Miller and Mr. Hardesty, the plaintiff admitted that five other employees were guilty of stealing articles from Kirk & Son's shop, and he gave the names of the parties and described the articles, and signed a paper setting forth this information. He was then taken to Brawner's Hotel, as he says, without his con-

sent and against his will; but as the other three declare, at his own instance, and request. He was told by the detectives immediately after his arrest, so they and Mr. Kirk assert, that they would be obliged to take him to the station-house to be dealt with by the Police Department; but he appealed to Mr. Kirk to prevent this being done, as his arrest, if thus given publicity, would become known to his invalid mother and the shock would probably cause her death. In consequence of this appeal, in view of his youth and upon his promise to appear before the grand jury and there testify against his co-employees, Mr. Kirk, Junior, consented that he should not be taken to the station-house; and the plaintiff himself suggested that he should be allowed to go with the detectives to a hotel and be there kept until he could give his testimony before the grand jury. He was taken to Brawner's Hotel and remained there all night. The next day he went back to Miller and Hardesty's office with them and staid there the entire day, and the night of that day he spent, still in the company of the detectives, at the Imperial Hotel. The next day he went before the grand jury and testified, though, as he now says, he did not then inform the grand jury that the other men, named by him to Mr. Kirk, had been stealing from the firm. After appearing as a witness before the grand jury he was permitted to return to his home, no accusation was lodged against him and he was reinstated by the firm in his position as an employee, where he remained until within a day or two before this suit was instituted, on the following twenty-first day of September. Henry C. Kirk, Senior, had no knowledge of the arrest of the equitable plaintiff when it was made, and according to the undisputed evidence had nothing to do with it; nor does he appear to have known what was done with the plaintiff when he was taken into custody.

The spoons found in the possession of the equitable plaintiff when he was arrested were beyond doubt the property of Samuel Kirk & Son. They had been made for them out of their own silver, by their own workmen; bore their

trade mark, and the cost of their manufacture had been paid by the firm. That an employee, without their knowledge or consent could surreptitiously take and carry away this property upon leaving with a fellow workman in its place and stead raw material equal in weight but not the equivalent in value of the manufactured article, and yet be innocent of the crime of larceny is a doctrine which finds no countenance or sanction in the law. When, therefore, the equitable plaintiff took and carried away from the shop of Kirk & Son on the thirty-first of July one-half dozen tablespoons and again on the day following an additional half dozen, he was incontestibly guilty of larceny. If so guilty was his arrest or detention lawful or illegal?

The illegality of the arrest and the unlawfulness of the detention are indispensible elements in this form of action; and if, therefore, the arrest were lawful and the detention were reasonable there was, and could be in the very nature of the case, no false arrest or false imprisonment. From the earliest dawn of the common law a constable could arrest without warrant when he had reasonable grounds to suspect that a felony had been committed; and he was authorized to detain the suspected party such a reasonable length of time as would enable him to carry the accused before a magistrate. And this is still the law of the land. It is wholly immaterial whether the suspicion arises out of information imparted to the constable by some one else, or whether it is founded on the officer's own knowledge. In either event what amounts to a sufficient ground of suspicion to justify an arrest, by a constable, without a warrant, is for the Court and not for the jury to determine. In *Pollock on Torts* this doctrine is thus stated: "What is reasonable cause of suspicion to justify arrest is—paradoxical as the statement may look—neither a question of law nor of fact. Not of fact, because it is for the Judge and not for the jury (citing *Hailes* v. *Marks*, 7 H. & N. 56); not of law, because no definite rule can be laid down for the exercise of the Judge's judgment (citing *Lister* v. *Perryman*, L. R. 4 H. L.

521, per LORD CHELMSFORD and LORD COLONSAY). It is a matter of judicial discretion such as is familiar enough in the classes of cases which are disposed of by a Judge sitting alone; but this sort of discretion does not find a natural place in a system which assigns the decision of facts to the jury and the determination of the law to the Judge. The anomalous character of the rule has been more than once pointed out and regretted by the highest judicial authority." LORD CAMPBELL in *Broughton* v. *Jackson*, 18 Q. B. 378; LORD HATHERLY, LORD WESTBURY and LORD COLONSAY in *Lister* v. *Perryman*, *supra*. " But," continues the author, " it is too well settled to be disturbed unless by legislation." *Pollock on Torts*, 192 (edition of ·1887); *Cohen* v. *Huskisson*, 2 M. & W. 477; *Warner* v. *Reddiford*, 4 C. B. n. s. 180; *Mure* v. *Kaye*, 4 Taunt. 34; 2 *Addison on Torts*, sec. 841. It may be broadly stated that what amounts to probable cause in cases of malicious prosecutions will amount to such reasonable grounds for suspicion of felony as will justify and require an officer to make an arrest. *Reg.* v. *Dadson*, T. & M. 385; 2 *Am. & Eng. Ency. Law*, 871 (second edition).

Now, do the facts show that Hardesty, the constable, had reasonable grounds to suspect that a felony had been committed and that the equitable plaintiff was the guilty party? If they do, the arrest, though made without a warrant, was lawful. The constable had been informed by the younger Mr. Kirk that larcenies were being committed, and he saw, the day preceding the arrest, the plaintiff come from the shop with something concealed in the inner pocket of his coat, and he further saw this package delivered on the street corner to another employee whom Miller followed and found to be Kirk's engraver. And then on the day of the arrest he saw the plaintiff with something again concealed in his pocket and upon arresting him found in his possession the spoons that belonged to Samuel Kirk & Son. Here then was a case where the plaintiff had actually stolen his employer's property—for as we have already said his taking of

the spoons even under the conditions testified to by himself was indisputably a larceny—and he was found with the stolen property in his possession.  There was, therefore, not only reasonable ground to suspect that a felony had been committed, but there was clear and conclusive evidence of the fact that the equitable plaintiff was guilty ; and had the officer taken the accused in a reasonable time before a magistrate to be committed or bailed for his appearance to answer the charge, the case would, on the plaintiff's own showing, have been at an end.

It cannot be questioned that when a person is arrested either with or without a warrant, it becomes the duty of the officer or the individual making the arrest to convey the prisoner in a reasonable time and without unnecessary delay, before a magistrate to be dealt with as the exigency of the case may require.  The power to make the arrest does not include the power to unduly detain in custody ; but on the contrary is coupled with a correlative duty, incumbent on the officer, to take the accused before a magistrate " as soon as he reasonably can."  1 *Hilliard on Torts*, 223, sec. 19 ; *Wright* v. *Court*, 4 B. & C. 596 ; *Firestone* v. *Rice*, 71 Mich. 377 ; *B. & O. R. R. Co.* v. *Cain*, 81 Md. 87 ; *Twilley* v. *Perkins et al.*, 77 Md. 252 ; *Rohan* v. *Sawin*, 5 Cush. 281 ; *Com. Dig. Imprisonment*, H. 4.  If the officer fails to do this and unreasonably detains the accused in custody he will be guilty of a false imprisonment no matter how lawful the original arrest may have been.  1 *Hil. Torts*, 213–214, sec. 9.

We are brought, then, to the prayer presented by the defendant at the close of the plaintiff's evidence.  It asked an instruction that the plaintiff was not entitled to recover, but was rejected by the Trial Court ; and this is the ruling brought up for review by the first bill of exceptions.  At the close of the evidence on both sides the defendants again offered the same prayer and it was again rejected, and this is one of the imputed errors complained of in the fifth bill of exceptions.  Before such a prayer can be granted in any

case all the plaintiff's evidence must be assumed to be true; and if, when conceded to be true, it fails to show a right on his part to recover, it then becomes the duty of the Court to withdraw the case from the consideration of the jury. But here, according to the plaintiff's own testimony, though he himself showed that he had been rightly arrested, he protested against being detained in the custody of the detectives; and if his statement in this particular be accepted as true, and this must be done for the purpose of determining whether such a prayer as we are now considering ought to be granted, then he was detained for an unreasonable length of time even though the detention was designed merely to secure his appearance before the grand jury. If, upon condition of his furnishing evidence that would lead to the arrest and conviction of other guilty parties it was, with the sanction of the State's Attorney, determined not to prosecute him, then he should have been taken before a magistrate to make formal complaint against the others, and he should not have been held in custody against his will for his appearance before the grand jury, unless upon his failure to give a recognizance when lawfully required by a justice of the peace, for his appearance as a witness. In the face of his testimony, the credibility of which was for the jury alone to pass on, it would have been erroneous to grant the prayer set forth in the first exception. The defendants proved by three witnesses in the most conclusive and satisfactory manner that the plaintiff was not taken before a magistrate only because he besought Mr. Kirk not to so deal with him, and that he himself suggested his willingness to go to a hotel and to remain there and with the detectives until he could appear before the grand jury. Here, then, was a direct conflict of testimony. It was for the jury to say whether they would believe the plaintiff, on the one hand, or the three witnesses who flatly contradicted him, on the other. The Court could not, under these conditions, withdraw the consideration of that question from the jury; and, therefore, could not grant the defendant's

first prayer in the fifth bill of exceptions—that prayer being the same one presented at an earlier stage of the case and set forth in the first exception.

Had, however, the jury found as a matter of fact, as they were clearly at liberty to do from the evidence before them, that the equitable plaintiff voluntarily remained in custody in order to appear before the grand jury as a witness, just as Mr. Kirk, Mr. Miller and Mr. Hardesty unequivocally testified was the case, then he was not unlawfully restrained of his liberty. False imprisonment consists in the unlawful detention of one against his will. Where there is no restraint and where the individual of his own free choice and volition remains where he is, though at liberty to depart if he pleases, he is not imprisoned at all. The defendants, therefore, had the undoubted right to have that view of the law submitted to the jury and the refusal of the Court to grant their third, fourth and fifth prayers embodying that principle, deprived them of a substantial defence and was clearly erroneous.

The second prayer of the defendants ought also to have been granted. It sought an instruction to the effect that there was no legally sufficient evidence in the case to maintain the action against the firm of Samuel Kirk & Son or Henry C. Kirk, Senior, one of the members thereof. The evidence, as we have stated, failed to show that the senior Mr. Kirk knew anything about the arrest or detention of the plaintiff, or that he ratified it afterwards. There is literally nothing in the whole record connecting him in any way with the transaction from its beginning to its end. One of several partners cannot drag the firm or his co-partners into a trespass by giving authority for the doing of an unlawful act in the name of the firm of which he is a member; for one partner has no power to bind the partnership to the commission of a wrongful act without the previous consent or subsequent concurrence of all the partners. *Petrie* v. *Lamont*, Car. & Marsh, 96. If the act complained of is done by one partner for the benefit of the

firm, and the firm afterwards takes advantage of it and adopts the transaction, all the members of the firm may then become responsible for the act and its consequences. 2 *Addison on Torts*, sec. 1321. If all the partners join in one trespass or tort they may all be sued for the injury, not because they are partners, but because the right of action arises from their personal misconduct. " In general," says *Collyer on Part.*, sec. 457, " acts or omissions in the course of the partnership, trade or business, in violation of law, will only implicate those who are guilty of them." And in *Parsons' Principles of Partnership*, sec. 140, the rule is succintly stated in this way : " If the firm is merely the occasion for a partner's tort, but not the agency in its commission, the copartners are not liable." Obviously under the proof in the record the firm of Samuel Kirk & Son was not the agency in the alleged unlawful arrest and imprisonment, nor was Henry C. Kirk, Senior. The thefts from the firm were the *occasion* for the arrest, and unless you identify that occasion with the agency that actually caused the arrest there is nothing to connect the firm or the senior partner with the transaction.

The plaintiff's second prayer ought to have been rejected because it not only disregards the principle just stated, but in spite of that principle, holds the firm, and each of the members thereof, liable if one partner aided, participated in and approved of the detention of the equitable plaintiff. The third prayer of the plaintiff relates to the measure of damages and is, in so far as it would not embrace the firm and the senior Mr. Kirk, free from objection; but inasmuch as its terms are broad enough to include both the firm and Mr. Kirk, Senior, it ought to have been modified, so as to exclude them; or, not being qualified in that way, should have been rejected altogether. The plaintiff's first prayer is also erroneous. In effect it leaves to the jury the determination of the question as to whether the arrest and detention were lawful. It permits them to take the facts and circumstances of the case and from a consideration of them

to say whether these were such facts and circumstances as in their opinion would have induced " a reasonable and dispassionate man to have made such arrest and to have so detained the said Garrett;" whereas, in cases of this character, it is for the Court to say whether a given state of facts, if found by the jury, is in law sufficient to create a reasonable ground of suspicion that will justify a constable in making an arrest without a warrant, and whether a detention is or is not unreasonable.

This disposes of all the prayers and we turn now to the three remaining exceptions which relate to the admissibility of the rejected evidence offered by the defendants. The second exception was taken to the refusal of the Court to allow a question to be asked the witness, Miller, relative to six silver teaspoons alleged to have been stolen by one of the other employees of Samuel Kirk & Son. The ground upon which it was claimed the question was admissible was that the spoons were discovered through the equitable plaintiff's instrumentality. This we think was irrelevant. It tended to prove no issue in the case and was wholly collateral thereto.

The fourth exception brings up the ruling of the Court, refusing to admit in evidence the indictments found by the grand jury against other employees of Kirk & Son. These indictments charged the accused with larceny, and amongst the names of the witnesses endorsed thereon was that of the equitable plaintiff. The proof of this fact would have reflected no light on the issues joined in this case. The accusations against these other men, as contained in formal indictments, could not tend to show the guilt of the equitable plaintiff, or that he was lawfully arrested or detained only for a reasonable time. Because of the irrelevancy of the proffered evidence the Superior Court rightly refused to admit it.

The third exception presents, however, a different question. The plaintiff had testified that whilst in custody, and shortly after his arrest, he had informed Mr. Kirk, in the

presence of the detectives, that he knew of other employees stealing silver, but that he was so intimidated by the threats they made to send him to the penitentiary, he scarcely knew what he said. He further testified that when he went before the grand jury he told them he could not say positively that any of the workmen had been stealing ; but that he knew they had had things made there the same as he had. Now, the contention of the defendants was that the plaintiff was not prosecuted for the larceny he had committed because he agreed to give information which would lead to the conviction of others ; and that he voluntarily remained with Miller and Hardesty until he could go before the grand jury. When he took the witness-stand in his own case, he in effect, denied that he had given any evidence before the grand jury implicating others, and he emphatically denied that he voluntarily remained in custody. One of the grand jurors was thereupon called by the defendants, and was asked what the plaintiff had testified to before the grand jury, as to the charges against these men ? To the admissibility of this question an objection was interposed, and upon the counsel for the defendants stating, in reply to an inquiry by the Judge, that he did not know what the juror would say, the objection was sustained. We think there was error in this ruling. The plaintiff, as we have seen, admitted that he had given information against his co-employees, and that he had given it as a condition of his not being prosecuted, and three of the defendants had unequivocally sworn that the plaintiff voluntarily remained with the detectives until he could go before the grand jury to testify. Subsequently, in his testimony in this case, he denied that he had told the grand jury what Mr. Kirk and the detectives said he had revealed to them ; and thus it became important to know what he did say before the grand jury ; both for the purpose of contradicting him on a material matter of fact, and also for the purpose of showing that he had in reality voluntarily remained in custody precisely as it was alleged by the defendants, that he agreed to

do.   If he made admissions before the grand jury that showed he voluntarily remained in custody, it was clearly competent to offer those admissions in evidence as independent facts, defeating his right to recover, even though he had not been first interrogated with respect to them when giving his testimony in this trial.   The admissions of a party to the record made against his own interest stand on a different footing from the statements of a mere witness.   A witness cannot be impeached by the proof of contradictory statements previously made by him, unless he is first asked with regard to them, and has his attention called to the time and place when and where, and the person to whom or in whose presence the statements were made.   But the admissions of a party to the cause, adverse to his right to recover, may always be shown without first questioning him concerning them.   *Bartlett & Robbins* v. *Wilbur*, 53 Md. 497.   The two classes of admissions are wholly dissimilar. In the case of a witness, his contradictory statements are admissible not to prove a specific fact, but solely for the purpose of impeaching him.   In the case of a party they are admissible to prove a fact adverse to his right to maintain the suit.   Under the circumstances already alluded to, the calling of a grand juror to testify as to what the plaintiff had deposed to before the grand jury, was not in contravention of any rule of law, and not repugnant to public policy.   A grand juror may be called to prove that a witness swore in the grand jury room differently from the way he has sworn before the petit jury, and this is no violation of the grand juror's oath of secrecy.   As we said in *Izer's case*, 77 Md. 110, the grand juror's oath of secrecy is intended to further and not to frustrate the due administration of justice ; and whilst its observance is obligatory on him and binds him for all time not to voluntarily disclose what has transpired in the jury room, it cannot be invoked to thwart the truth or to mask and cover up falsehood, when the juror is called upon in a Court of justice to divulge what he would otherwise, but for the mandate of the law com-

pelling him to speak, be bound to keep secret. The inability of the defendants' counsel to state to the Court what the grand juror would prove, furnished no reason for the exclusion of the evidence. The counsel could not have known what the grand juror would testify to, unless the latter had, in violation of his oath, previously revealed it.

For the errors indicated in rejecting the defendant's *second*, *third*, *fourth* and *fifth* prayers, and in granting the plaintiff's *first* and *second* and in not restricting and qualifying the *third*, as also for the error in excluding the evidence proposed to be given as noted in the *third* bill of exceptions, the judgment in favor of the plaintiff must be reversed and a new trial must be had.

> *Judgment reversed with costs above and below and new trial awarded.*

(Decided Decemher 3d, 1896).