# CARROLL *v.* PARRY.

ARREST WITHOUT WARRANT; FALSE IMPRISONMENT; JUSTIFICATION; UNREASONABLE DETENTION; PROBABLE CAUSE; BURDEN OF PROOF; MALICE; WAIVER OF EXCEPTION; EVIDENCE.

1. The right of a police officer under the common law to arrest without warrant one whom he has reason to suspect has committed a felony has not been taken away by statute in the District of Columbia.

2. An employer is justified in causing the arrest and imprisonment of an employee after a series of thefts from his warehouse, where the one arrested is the custodian of the key to the warehouse, and is implicated by another employee who has admitted his own guilt.

3. One arrested on a Saturday afternoon and discharged without prosecution on the following Monday morning, at the first sitting of the police court after his arrest, is not unreasonably detained, so as to make the instigator of his arrest liable for false imprisonment.

4. The burden of proof as to probable cause for the arrest and imprisonment of the plaintiff is not on the defendant in an action for false imprisonment, where the defendant is charged in the declaration with acting falsely, maliciously, and without any reasonable or probable cause. (Mr. Chief Justice SMYTH dissenting.)

5. The defendant in an action for false imprisonment need not show that he was without malice in causing the arrest and imprisonment of the plaintiff.

6. An exception to the refusal to charge, in an action for false imprisonment, that their verdict should be for the defendant, if the jury should find that he, acting in good faith and believing the truth of his information and relying thereon, caused the arrest of the plaintiff, is not waived by defendant submitting the same prayer modified by the insertion of the words "and without malice" after the words "in good faith." (Mr. Chief Justice SMYTH dissenting.)

7. In an action by an employee against his employer for false imprisonment, where the police officer who arrested the employee by the direction of the police sergeant testifies as a witness for the plain-

NOTE.—On the question of liability of police officer for making arrest without a warrant for a felony, see notes in 51 L.R.A. 203, 42 L.R.A. (N.S.) 71, and L.R.A.1915B, 505.

tiff that the employer preferred a criminal charge against the plain-
tiff with the sergeant, it is error to refuse to permit the sergeant
to testify whether the employer made such a charge, as such evi-
dence is proper to test the recollection of the plaintiff's witness.
(Mr. Chief Justice SMYTH dissenting.)

No. 3158. Submitted December 9, 1918. Decided March 31, 1919.

HEARING on an appeal from a judgment of the Supreme
Court of the District of Columbia, on verdict, in an action for
false imprisonment.                                    *Reversed.*

The COURT in the opinion stated the facts as follows:

Appeals from a verdict and judgment for the plaintiff, Jack-
son G. Parry, an infant, by his next friend, Richard L. Parry,
appellee here, in the sum of $3,000. A former judgment was
reversed. *Carroll* v. *Parry,* 43 App. D. C. 363, Ann. Cas.
1916E, 971.

The evidence for the plaintiff tended to show that he and a
colored man by the name of Tyler were employed by the defend-
ants, Harry R. Carroll and Louis D. Carroll, who conducted an
electric supply business and warehouse in this city, plaintiff
then being under age. Having reason to suspect that someone
was stealing from them, the Carrols called at detective head-
quarters, and detectives were detailed on the case. Shortly
thereafter Tyler was arrested, admitted his guilt, and asserted
that no one was implicated with him. A policeman by the name
of Connors testified that he was directed by Desk Sergeant
Edwards of No. 1 police station to arrest the plaintiff for officers
O'Brien and Springman, who had charge of the case, and who
had arrested Tyler; that one of the Carrolls went with Connors
to their store "and pointed out the plaintiff, and he (Connors)
placed him under arrest, and the three walked to No. 1 Police
Station, and Louis Carroll preferred a charge of larceny against
the plaintiff with Sergeant Edwards; that there was no com-
plaint, affidavit, warrant, information, or indictment against

the plaintiff." The plaintiff testified that "no charge was pre-
ferred against him," and that, after remaining in jail "from
Saturday afternoon until the following Monday morning," he
was released. He admitted "that he was indirectly the cus-
todian of the key to the warehouse, the same hanging on a nail
beside him." He stated, however, that "everybody in the Car-
rolls, place of business had equal access to the key."

The evidence for the defendants tended to show that from
time to time goods had been stolen from their establishment, and
that on January 6, 1912, Louis Carroll saw Tyler approach
their warehouse and take therefrom cable of the value of $85,
the property of the Carrolls; that Tyler, when arrested, ad-
mitted the theft of this cable and of other goods. Harry S.
Schlegal, to whom Tyler was indebted, called on Tyler at the
police station where he was locked up and, during the interview
with Tyler, Tyler stated that he had stolen the Carrolls' goods
"and that a young white man employed by the defendants was
implicated with him in the crime." Later Schlegal called at the
store of the Carrolls and communicated to Harry R. Carroll the
statement of Tyler. Thereupon Louis Carroll, at the request of
his brother Harry, went to the police station and interviewed
Tyler in the presence of officer Kerns, who testified that "Tyler
stated that the shipping clerk assisted him in stealing the goods
and divided the proceeds received therefrom; that this was be-
fore the plaintiff was brought to the station." Officer Edwards,
by whose direction Connors testified the arrest was made, stated
that Louis Carroll, after his interview with Tyler, requested
plaintiff's arrest, but that he, Edwards, refused to take any ac-
tion, "because it was a case which belonged to headquarters;"
that he then talked with Sergeant Carter in charge of detective
affairs and was instructed by him to interview Tyler, which he
did; that Tyler stated to him that plaintiff was implicated with
him in the stealing "and that they sold the goods together and
divided the money; that thereupon he called up Carter and
advised him concerning the statements made by Tyler and was
told by Carter to have the plaintiff arrested." This witness was

asked whether Mr. Louis Carroll had requested him to place a charge of larceny against the plaintiff. Objection was made on that ground that "it does not rebut anything." The objection was sustained and exception noted.

Defendants' evidence also tended to show that plaintiff was in charge of their warehouse, was responsible therefor, and had custody of the key thereto. The testimony of Tyler at the former trial was introduced, corroborating statements attributed to him concerning the plaintiff. Tyler was asked on cross-examination the following question: "You do not claim that Mr. Parry (plaintiff) had anything to do with you in the taking of these goods?" To this he answered, "Yes, sir, he was in with me."

Harry Carroll testified that after an interview with plaintiff *on the Saturday night* of his arrest he became convinced that he was innocent, and plaintiff's counsel was permitted to ask this witness, over defendant's objection, whether the witness had taken any steps thereafter to procure plaintiff's release.

In rebuttal, the testimony of officer Carter at the former trial was introduced, to the effect that he neither directed nor authorized plaintiff's arrest.

In "defendants' instruction No. 3" the court was asked to instruct the jury, in effect, that if they believed the testimony of defendants' witnesses and should further find "that the said defendants acting in good faith and believing the said information to be true, and relying thereon, caused the arrest and imprisonment of the plaintiff, their verdict should be for the defendants." Plaintiff objected, the court sustained the objection, and defendants excepted. Thereupon the court granted defendants instruction No. 4, which was instruction No. 3 modified by the insertion of the words "and without malice" before the words "and believing the said information to be true."

At the close of the court's charge defendants' counsel renewed his exception to the refusal of the court to grant the prayer to which reference has been made, and further excepted to the charge of the court to the effect that the burden was on the defendants to prove the absence of malice and show probable cause.

*Mr. Charles F. Diggs,* for the appellant, in his brief cited:

*Bacon* v. *Towne,* 4 Cush. 237; *Browne* v. *Selfridge,* 84 App. D. C. 242; *Crescent City, etc.* v. *Butchers' Union,* 120 U. S. 141; *Flickinger* v. *Wagner,* 46 Md. 580; *Johnston* v. *Sutton,* 1 T. R. 544; *Pickford* v. *Hudson,* 32 App. D. C. 490; *Purcell* v. *McNamara,* 9 East. 371; *Spitzer* v. *Friedlander,* 14 App. D. C. 556; *Turner* v. *Ambler,* 10 Q. B. 257; *Wheeler* v. *Nesbitt,* 24 How. 544; *Willans* v. *Taylor,* 6 Bing. 184.

*Mr. Thomas M. Baker* and *Mr. Crandal Mackey,* for the appellee, in their brief cited:

12 Am. & Eng. Enc. Law, 731; *Caperton* v. *Martin,* 4 W. Va. 169; 19 Cyc. 364; 5 Enc. of Ev. 73 & 733; *Hall* v. *Connecticut S. B. Co.* 13 Conn. 319; *Nugent* v. *Brenchard,* 36 N. Y. Supp. 102, 157 N. Y. 687; *Parry* v. *Carroll,* 43 App. D. C. 363; *State* v. *Phillips,* 118 Iowa, 660.

Mr. Justice ROBB delivered the opinion of the Court:

False imprisonment consists in the unlawful restraint of one person by another (*McCarthy* v. *De Armit,* 99 Pa. 63; *Miller* v. *Ashcraft,* 98 Ky. 314, 32 S. W. 1085; *State* v. *Lunsford,* 81 N. C. 528; *Snead* v. *Bonnoil,* 166 N. Y. 325, 59 N. E. 899), and malicious prosecution in an unsuccessful prosecution begun in malice and without probable cause. *Auerbach* v. *Freeman,* 43 App. D. C. 176.   In jurisdictions where the strict separation of the forms of action has been abolished, the two may be joined in the same suit.   11 R. C. L. 791; *Page* v. *Citizens' Bldg. Co.* 111 Ga. 73, 51 L.R.A. 463, 78 Am. St. Rep. 144, 36 S. E. 418; *Krulevitz* v. *Eastern R. Co.* 140 Mass. 573, 5 N. E. 500; *Wood* v. *Graves,* 144 Mass. 365, 59 Am. Rep. 95, 11 N. E. 567; *Tillman* v. *Beard,* 121 Mich. 475, 46 L.R.A. 215, 80 N. W. 248, 13 Am. Crim. Rep. 7; *Boeger* v. *Langenberg,* 97 Mo. 390, 10 Am. St. Rep. 322, 11 S. W. 223.   As the gist of the action of false imprisonment is the unlawful deprivation of liberty, it

follows that no allegation of malice or corrupt motive is necessary in the declaration. Where, however, the plaintiff alleges malice and the want of probable cause, it has been held that proof of such allegation is necessary to entitle him to recover. *Rich* v. *McInerny,* 103 Ala. 345, 49 Am. St. Rep. 32, 15 So. 663.

The declaration in the present case is in three counts. In the first it is alleged that the defendants, "maliciously and without any reasonable or probable cause whatsoever, caused the plaintiff, Jackson G. Parry, to be arrested by an officer of the Metropolitan Police of the District of Columbia, upon the false and unfounded charge of larceny * * * and caused the said plaintiff to be imprisoned in a cell in said station and kept and detained him there for a long space of time; to wit, for the space of two days then next following, at the expiration of which said time the plaintiff was discharged from said unlawful imprisonment." In the second count it is alleged that the defendants, "falsely, maliciously, and without any reasonable or probable cause, charged the said plaintiff with the crime of larceny, and then and there, without a warrant or other process, caused and procured the plaintiff to be arrested on said charge," and imprisoned as set forth in count one, "at the expiration of which time the plaintiff was discharged from the said unlawful imprisonment, the defendants having failed to prosecute their said unlawful charge against him." The averment is then repeated that all the acts complained of were "without reasonable or probable cause, and wilful and malicious." The third count does not differ materially from the first.

It will be observed that in counts 1 and 3 there is no averment that the arrest was without a warrant; in other words, the averments in these counts are consistent with the theory that a complaint had been regularly filed and the arrest made under authority of a warrant issued thereon. They more nearly described a malicious prosecution than a false arrest or imprisonment. Count 2 alleges the arrest of the plaintiff for "the crime of larceny * * * without a warrant or other process." Taking this count as a whole, it possibly may be said to charge a false

imprisonment, although the intent of the pleader is by no means clear. See *Johnson* v. *Von Kettler*, 84 Ill. 315; *Haskins* v. *Ralston*, 69 Mich. 63, 13 Am. St. Rep. 376, 37 N. W. 45. Certain it is, however, that the plaintiff in this count has stated with great precision that the defendants acted "falsely, maliciously, and without any reasonable or probable cause."

Inasmuch as the view we have taken of the exceptions renders possible a new trial, we deem it our duty to discuss the general aspects of the case. The crime committed by Tyler, in which according to his statement the plaintiff participated, was grand larceny; in other words, a felony. At common law a constable could arrest without warrant one whom he had reason to suspect had committed a felony, and we are aware of no statute in modification of that rule in this jurisdiction. In *Kirk* v. *Garrett*, 84 Md. 383, 405, 35 Atl. 1089, a false imprisonment case, the court after stating the common-law rule said: "And this is still the law of the land. It is wholly immaterial whether the suspicion arises out of information imparted to the constable by some one else, or whether it is founded on the officer's own knowledge. In either event what amounts to a sufficient ground of suspicion to justify an arrest, by a constable, without a warrant, is for the court, and not for the jury, to determine. * * * It may be broadly stated that what amounts to probable cause in cases of malicious prosecutions will amount to such reasonable grounds for suspicion of felony as will justify and require an officer to make an arrest." The court in that case was careful to point out that when a person is arrested, either with or without a warrant, it is the duty of the officer or individual making the arrest "to convey the prisoner in a reasonable time, and without unnecessary delay, before a magistrate to be dealt with as the exigency of the case may require. The power to make the arrest does not include the power to unduly detain in custody; but, on the contrary, is coupled with a correlative duty, incumbent, on the officer, to take the accused before a magistrate 'as soon as he reasonably can.'" If the officer fails in this respect, he will be guilty of a false imprisonment, even though the original arrest may have been lawful.

In *Brish* v. *Carter,* 98 Md. 445, 57 Atl. 210, another false imprisonment case, where the arrest was made without a warrant, and the grounds for suspicion were no more persuasive than here, the court sustained an instruction to the jury to the effect that if they should find the facts to be as claimed by the defendants the plaintiff could not recover. In our former opinion in this case we ruled that the legal effect of the facts is for the court. *Carroll* v. *Parry,* 43 App. D. C. 363, Ann. Cas. 1916E, 971. See also *Filer* v. *Smith,* 96 Mich. 347, 35 Am. St. Rep. 603, 55 N. W. 999.

The most that can be made of the evidence in the present case is that the Carrolls, after investigation, requested the apprehension of the plaintiff, and inasmuch as the police, before acting, made an independent investigation, it may be seriously doubted whether in any view the Carrolls could be held liable for what followed. *Tillman* v. *Beard,* 121 Mich. 475, 46 L.R.A. 215, 80 N. W. 248, 13 Am. Crim. Rep. 7; *Doty* v. *Hurd,* 124 Mich. 671, 83 N. W. 632; *Rush* v. *Buckley,* 100 Me. 322, 70 L.R.A. 464, 61 Atl. 774, 4 Ann Cas. 318; *Boeger* v. *Langenberg,* 97 Mo. 390, 10 Am. St. Rep. 322, 11 S. W. 223; *Gelzenleuchter* v. *Niemeyer,* 64 Wis. 316, 54 Am. Rep. 616, 25 N. W. 442. But, if we assume that they might, the result is the same. They had suffered from a series of thefts from their warehouse which, they testified, was in charge of the plaintiff, who admitted on the witness stand "that he was indirectly the custodian of the key" thereto. The driver, Tyler, when arrested, admitted his guilt and, although he at first asserted that no one was implicated with him, finally in a statement to a third party implicated the plaintiff. One of the defendants interviewed him in the presence of a police officer and, according to the uncontradicted testimony of both, he reiterated his statement, as subsequently he did to the desk sergeant and later on the witness stand. We think these facts and circumstances constituted reasonable grounds for the suspicion that plaintiff was implicated in the commission of a felony. The fact that when first arrested Tyler did not implicate the plaintiff is of no consequence, for the evidence is uncontradicted and convincing that he subsequently did so to a third party, to one of the defendants in the presence of a police officer, to a sergeant

of police, and later on the witness stand.   When Tyler made this statement to a third party he already had freely confessed his own guilt and, in the circumstances, we think the defendants were justified in accepting and acting upon that statement.

The arrest of plaintiff took place, according to his statement, on a Saturday afternoon.   There is no testimony tending to show any undue delay on the part of the officer who made the arrest, or of the police department, in taking plaintiff to the police court, where he was discharged.   The fact that one of the defendants, after interviewing the plaintiff on Saturday night, became convinced of his innocence, does not warrant the inference that defendants were remiss in any duty owing to the plaintiff.   The police court was not in session at that time, nor upon the day following.   So far as appears, at the first sitting of the court following the arrest plaintiff was discharged. There was, therefore, no unreasonable detention of the plaintiff.

Coming now to the exceptions, we first will consider the court's charge that the burden of proof as to probable cause was on the defendants.   Ordinarily this is the rule in a false imprisonment case.  *Filer* v. *Smith,* 96 Mich. 347, 35 Am. St. Rep. 603, 55 N. W. 999.   But in the present case we think plaintiff assumed that burden.   To hold otherwise would be to disregard the rules of pleading.   The plaintiff deliberately elected to charge the defendants with acting "falsely, maliciously, and without any reasonable or probable cause."   This language is so interwoven with the other averments of the count that it may not be treated in reason as surplusage.   It is, and evidently was intended to be, a material averment of fact.   Instead of merely stating that defendants had unlawfully caused him to be arrested and imprisoned, as he might have done, he forestalled their possible defense and deliberately characterized their acts as done in bad faith and from a corrupt motive. And yet the jury were told that the burden was on the defendants to prove the negative of this positive averment in plaintiff's declaration.   This was error.   It also was error, in our view, for the court to refuse the prayer offered by defendants, for if the imprisonment was lawful, it did not become unlawful be-

cause done with malicious intent.  *Kelly* v. *Durham Traction Co.* 132 N. C. 368, 43 S. E. 923, 14 Am. Neg. Rep. 164; *Johnson* v. *Maxon,* 23 Mich. 129; *Allen* v. *Flood* [1898] A. C. 1, 67 L. J. Q. B. N. S. 119, 62 J. P. 595, 77 L. T. N. S. 717, 14 Times L. R. 125, 46 Week. Rep. 258, 17 Eng. Rul. Cas. 285. This request having been refused, the defendants did not waive their exception by submitting another prayer in modified form. Rather was their action to be commended, for it might have obviated the necessity for an appeal.

Plaintiff's witness Connors, who arrested the plaintiff by direction of Sergeant Edwards, having testified that Louis Carroll "preferred a charge of larceny against the plaintiff with Sergeant Edwards" (although plaintiff testified that no charge was preferred against him), it was error not to permit the latter officer to testify whether Carroll made such a charge against the plaintiff.   In the brief of plaintiff the form of the question is criticized, the question being, "Did Mr. Louis Carroll ask you to place a charge of larceny against this plaintiff?"   We think this view too technical.   The obvious purpose of the question was to test the recollection of the witness Connors, and the answer should have been received.

While the rights of the citizen are to be carefully safeguarded, to the end that he may not be deprived without reason either of his liberty or good name, "public policy demands that every citizen be alert to prevent infractions of the law, and, where the law has been broken, to use his best efforts to bring the guilty to account."  *Simmons* v. *Sullivan,* 42 App. D. C. 528.   And where, as here, a crime of a serious nature has been committed and from the admitted facts or uncontradicted evidence it appears that the injured party has done nothing more than take reasonable and proper steps for the discovery and apprehension of the criminal, that party merits, and should receive, the protection of the court.

Judgment reversed, with costs, and a new trial awarded.

*Reversed.*

Mr. Chief Justice SMYTH dissenting:

To my mind it is clear that the declaration in this case charg-

es false imprisonment, and not malicious prosecution. On that theory it was tried in the lower court and argued by both parties in this court. In none of the briefs is there any suggestion that the case asserted was one for malicious prosecution. It is, then, by the law of false imprisonment that it must be judged. In such a case the plaintiff is not required to prove malice or want of probable cause. The burden of establishing probable cause is on the defendant. 5 Enc. Ev. 733. But the majority of the court rules that because the plaintiff alleged malice and want of probable cause, although it was unnecessary for him to do so, he must prove them. This, I believe, is not in harmony with either reason or authority. "The demand and refusal charged in the declaration in this case," says the court of appeals of Maryland (*Ferguson* v. *Tucker,* 2 Harr. & G. 182), "being the unnecessary averment of the breach or infringement of the contract stated, need not be proved, and may be rejected as surplusage." Speaking of unnecessary allegations in a declaration, Judge Sanborn of the circuit court of appeals for the eighth circuit said: "If the cause is well stated without them,— if their removal from the complaint would still leave the averments sufficient to constitute a cause of action,—they are mere surplusage, and may be disregarded." *Geer* v. *Ouray County,* 38 C. C. A. 250, 97 Fed. 442. See also 1 Estee, Pl. & Pr. 4th ed. § 191; Bliss, Code Pl. § 215; *Lake County* v. *Keene Five-Cents Sav. Bank,* 47 C. C. A. 464, 108 Fed. 515; *Grubb* v. *Mahoning Nav. Co.* 14 Pa. 302; *Billingham* v. *Bryan,* 10 Iowa, 317; *Nixon* v. *Reeves,* 65 Minn. 159, 33 L.R.A. 506, 67 N. W. 989. The only case cited by the majority in support of their conclusion is *Rich* v. *McInerny,* 103 Ala. 345, 49 Am. St. Rep. 32, 15 So. 663. It is largely based on a section of the Alabama Code prescribing the form of a complaint in a false imprisonment action.

The majority review the testimony upon the question of probable cause and reach the conclusion that it "constituted reasonable ground for the suspicion that the plaintiff was implicated in the commission of a felony" and that "the defendants were justified in accepting and acting upon" the statement of Tyler.

There is not a line or word in the assignments of error which
invites the court to do this.    The point was not argued in the
brief of either party, and the appellee has never been given an
opportunity to be heard upon it in this court.    "I object in all
cases," said Mr. Justice Daniels of the Supreme Court of the
United States, "to the decision of questions not strictly in point
or which have not been regularly discussed, and not only ma-
turely, but necessarily, considered.    If there is any one source
of embarrassment more prolific than all others, it is this very
practice."

The court did not err in refusing to give the third instruction
requested by the defendants, because all its elements were em-
bodied in the fourth instruction requested by them and given
by the court.    *District of Columbia* v. *Gray,* 6 App. D. C. 314;
*Wallace* v. *United States,* 18 App. D. C. 152; *Finney* v. *Dis-
trict of Columbia,* 47 App. D. C. 48, L.R.A.1918D, 1103.    But
it is urged that in addition to those elements the fourth instruc-
tion imposed upon the defendants the burden of showing that
they acted "without malice," and that it was immaterial wheth-
er or not they had malice if there was probable cause for their
action.    It may be admitted as a sound proposition of law that
if they had probable cause they would be justified even though
they were moved by malice, and that this instruction, by placing
upon them the obligation to show that they were without malice,
imposed too great a burden; none the less defendants are in no
position to complain, for the obvious reason that they requested
the court to give the instruction with those words in it.    If
there is any rule of practice that is well settled, it is that a
party may not predicate error upon the giving of an instruction
which he himself requested.

The majority find that prejudicial error was committed by
the refusal of the court below to permit the witness Edwards to
answer the question, "Did Mr. Louis Carroll ask you to place
a charge of larceny against this plaintiff?" No offer of proof
was made, so we do not know what the defendants expected to
prove by the question.    To predicate a reversal upon the ruling,
we must assume that the answer would be in the negative, for

otherwise it would not be favorable to defendants; but we are not permitted to indulge in a presumption in order that we may overturn a judgment.   Rather, it is our duty to assume that every action of the lower court is right until the contrary appears.   *Boley* v. *Griswold,* 20 Wall. 486, 488, 22 L. ed. 375; 376; *Cliquot's Champagne,* 3 Wall. 114, 140, 18 L. ed. 116, 119; *Sturges* v. *Carter,* 114 U. S. 511, 522, 29 L. ed. 240, 244, 5 Sup. Ct. Rep. 1014; *Bear Lake & River Waterworks & Irrig. Co.* v. *Garland,* 164 U. S. 1, 25, 41 L. ed. 327, 336, 17 Sup. Ct. Rep. 7.   Furthermore, Edwards had said but a moment before that Carroll requested him "to order the arrest of the plaintiff as a party connected with the theft of his goods."   If we assume that Edward's answer to the question under consideration would be in the negative, it would have no tendency to disprove his first statement, because there is a distinction between a request to order the arrest of a person and a request to place a charge against him.   Yet one would indicate as much as the other responsibility on Carroll's part.

Of course, where a party who causes the arrest of another has probable cause for believing him guilty, he merits, and should receive, the protection of the court, but in the case at bar the question at issue is as to whether or not the defendants had such cause.   If they had not, they are not entitled to the protection of the court; and two juries have found that they were without probable cause for their action.   Parry's rights are just as sacred as those of the defendants and should be protected with the same jealous care.

Believing that there is no error in the record and that the case should be affirmed, I dissent.