DEVILLO C. BRISH *vs.* ROBERT D. CARTER ET AL.

*Action for False Arrest and Imprisonment—Reasonable Grounds for Suspecting Guilt of Person Arrested—What is not Unreasonable Detention.*

A peace officer may make an arrest without warrant whenever he has reasonable grounds to suspect that a felony has been committed, and it is immaterial whether the suspicion arises out of information given to the officer by some one else or whether it is founded on his own knowledge.

The Marshal of Police of Baltimore City was informed by a telegram that a horse, which was particularly described, had been stolen in the town of Westminster and the Marshal was requested to look out for it. Such a horse had been stolen and the telegram was sent in good faith. Certain police officers were thereupon directed to look for the horse and one of them found the plaintiff in this case in possession of a horse which substantially corresponded with the description given. Upon being interrogated, the plaintiff gave evasive and contradictory answers as to the ownership of the horse and as to where he had obtained it. He was then arrested and taken before a Station House magistrate. It was subsequently shown that plaintiff's horse was not the one that had been stolen. *Held*, that the police had reasonable grounds to suspect that the plaintiff was guilty and he is not entitled to recover in an action against them for false arrest.

In the above case plaintiff when arrested was taken promptly to the Station House and brought before the Station Justice during the first hours thereafter prescribed by statute for the sittings of the Justice. The plaintiff was then examined and remanded to custody until the next morning when he was again brought before the Justice and discharged, the police officers having then learned that plaintiff was not guilty. *Held*, that the officers had not unreasonably detained the plaintiff in custody and are not liable in an action for false imprisonment.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

*Plaintiff's Second Prayer.*—If the jury believe from the evidence that plaintiff offered defendant, John Baker, money sufficient to pay for a telephone or telegraphic message to Sheriff Patterson of Frederick County, Maryland, Mayor William F.

Chilton of Frederick City, Maryland, or Murray Brish and at the time of said offer, told John Baker that any one of them would prove his innocence, and that said John Baker refused to accept said money or to allow him to send a message to either Patterson, Chilton or Brish, then the plaintiff is entitled to recover as against said Baker; and if they shall further believe that plaintiff told defendant, Robert D. Carter, that Louis M. Zimmerman could prove his innocence and asked · Carter to send for him or allow plaintiff to do so but he refused plaintiff's request, then plaintiff is entitled to recover a verdict against said Carter.    (*Granted as modified.*)

*Defendants' Second Prayer.*—If the jury find from the evidence that on the 25th day of May, 1898, the defendant S. T. Hamilton was Marshal of Police of Baltimore City, that on the said date the said Hamilton received a telegram in the following language: "Westminster, Md., May 25th, 1898. To the Chief of Police of Baltimore, Maryland. Watch for horse, stolen; dark bay; four white feet; star in face; white tip nose; shoes on front feet, mane on left side; medium size; had halter and wagon bridle on. Signed, William Englar." That said telegram was sent in good faith by the witness, Harry Englar, in the name of his father; and that the said Englar acted upon and was prompted by the advice of J. Milton Reifsnider of Westminster; that the said Reifsnider was then State's Attorney of Carroll County, of which Westminster is the county seat; that, as a matter of fact a horse had been stolen from William Englar, that upon the receipt of said telegram, the said Hamilton notified the officers of the Northwestern Police Station of the Northwestern Police District of Baltimore City of said telegram, and requested them to look out for such a horse that the defendant, John Baker, was then Police Captain of Northwestern District; that the defendant, Robert D. Carter, was then lieutenant of said district; that the defendant, Harry B. Scwartz, was then round-sergeant of said district; and that the defendant, John W. Coulbourne, was then patrolman of said district. And if the jury further find that the defendants, Scwartz and Coulbourne,

on May 31st, 1898, found a horse at the Stockton Livery
Stables, 821–823 Stockton street, answering substantially the
description of the horse they had been requested to look out
for as the stolen horse; that the said horse was claimed by
the witness, John B. Hammond; that the said John B. Ham-
mond afterwards stated to the said Scwartz that he got the
horse from Loudon County, Virginia; that he subsequently
stated that the horse belonged to Mr. Brish, the man who
came down with him; that the said Scwartz and Coulbourne
afterward learned that John B. Hammond and the plaintiff,
Devillo C. Brish, together had been in possession of said
horse and left him at the Stockton Livery Stables; that the
defendant, John W. Coulbourne, acting upon information re-
ceived from Marshal Hamilton, and contained in the afore-
said telegram, and upon the statements of the said Brish and
Hammond, arrested the plaintiff, and took him to the North-
western Police Station about 1.15 o'clock in the afternoon;
that between the hours of three and five o'clock the plaintiff,
Devillo C. Brish, was taken before J. Maulsby Smith, who
was then the Police Justice presiding at the Northwestern
Police Station, and committed for further hearing; that the
said Devillo C. Brish stated that the horse belonged to his
uncle, Murray Brish, who resided at Frederick, Maryland;
that the defendant, Hamilton, on the same afternoon, com-
municated with the Chief of Police of Frederick making in-
quiry about the plaintiff, Brish, and his companion, Hammond,
that on the following morning the Marshal received a telegram
from Chilton, Mayor of Frederick, stating that "Brish and
Hammond were all right," and that thereupon they were dis-
charged, then the verdict of the jury must be for all the de-
fendants, excepting Baker and Carter, and also for those two
officers respectively unless the jury find the facts stated in the
plaintiff's second prayer relative to each.    (*Granted as modi-
fied.*)

The cause was argued before McSHERRY, C. J., FOWLER,
PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. Dodd McFarland* (with whom was *Peter J. Campbell* on the brief), for the appellant.

*Alonzo L. Miles*, for the appellees.

PAGE, J., delivered the opinion of the Court.

This is an action of false imprisonment brought by the appellant against the appellee. There is no question raised upon the pleadings.

The facts are substantially as follows, viz., the appellant with one John D. Hammond, arrived in Baltimore City, bringing with him a horse, owned by his uncle, Murray Brish of Frederick City. About one o'clock of the same day they were arrested by the police of Baltimore City, taken to the Northwestern Police Station, searched and committed to a cell. The arrest was made without warrant. At the station house, on being questioned, the appellant told the officers who he was and to whom the horse belonged, and the object they had in bringing it to Baltimore. He then asked Lieutenant Carter to send for his uncle, who was a clerk in the Custom House; Carter said "do you want your uncle to know you stole a horse;" and Hammond replied "No, to prove my innocence." He offered to pay the messenger boy if one should be sent for him. He also asked Officer Colbourne to stop at his uncle's house and tell him about the matter. But the Lieutenant, instead of permitting this to be done, ordered him to be locked up in a cell. Appellant also asked Captain Baker to telephone to his uncle, Murray Brish, in Frederick, or to the Mayor, and offered to pay the expense therefor; but the Captain said it was in the "Marshal's hands." Later in the afternoon (the evidence as to the precise hour being conflicting), he was brought before the magistrate, and remanded by him. About ten the next day the magistrate released him.

On the part of the defendants there was evidence that on the 25th May the Marshal of Police received a telegram from William Englar, as follows: "Westminster, Md., May 25th, 1898. To the Chief of Police of Baltimore, Maryland, watch

for horse, stolen, dark bay; four white feet, star in face; white tip nose; shoes on front feet, mane on left side, medium size, had halter and wagon bridle on." That a horse had been stolen from William Englar and the telegram was sent in good faith on the advice of the State's Attorney for Carroll County. The Marshal therefore notified the officers of the Northwestern Police District to look out for the horse. Officer Colbourne, while "looking out" as required by the order, discovered a horse that, in his opinion, answered the description contained in the telegram. Hammond, who was first seen by the officer, was then interrogated. His replies was apparently evasive. At first he said, he owned the horse, that he had owned it about a year and had got him from Loudon County, Virginia; then, that the horse did not belong to him; then, that it belonged to the man Brish, who had come down with him, and finally, that it did not belong to the man who had come down with him, but to his uncle in Frederick. There was also evidence tending to show that the appellant was arrested and brought immediately to the station, arriving there about 1.15 P. M., and was carried before the magistrate between three and five o'clock, the same afternoon, who committed him for a further hearing. That on the same day the Marshal communicated with the Chief of Police of Frederick City, and on the next morning learned from him, by telegraph, that the men were "all right." They were then released by the magistrate.

Four prayers were offered by the appellant and three by the appellees, of which the Court refused all of the appellant's as offered, but granted his second and fifth with modifications; and granted the second of the appellees.

To these rulings the appellant excepted and has now taken this appeal.

Since the cases of *Kirk* v. *Garrett*, 84 Md. 383, *Edger* v. *Burke*, 96 Md. 715, and *B. &. O. R. R. Co.* v. *Cain*, 81 Md. 87, it may be regarded as settled in this State that a peace officer may arrest without warrant, whenever he has reasonable grounds to suspect that a felony has been committed; and

that it is "wholly immaterial whether the suspicion arises out of information imparted to the officer by some one else, or whether it is founded on his own knowledge," and further, that what will amount to "such reasonable grounds of suspicion, is for the Judge, while the facts upon which it is based are for the jury." In one of the cases just cited, *Kirk & Son v. Garrett, supra,* this Court said, "it may be broadly stated that what amounts to probable cause in cases of malicious prosecutions, will amount to such reasonable grounds for suspicion of felony as will justify and require an officer to make an arrest."

Now in this case there is evidence tending to prove that before the appellant was arrested the Marshal of Police had received a notification that a horse, particularly described, had been stolen, with a request that he "watch out" for it. This information, made in good faith, by the son of the horse's owner, on the advice of the State's Attorney of Carroll County, was correct in point of fact—such a horse had really been stolen. The Marshal thereupon notified the officers of the Northwestern Police District to keep a "look out;" And in obeying this order Officer Colbourne found a horse in a livery stable, which in his opinion substantially corresponded with the description contained in the telegram by which the notification had been communicated. The alleged discrepancies between the horse thus noted by the officer and the description do not seem to be very substantial—for instance the mane was on the left instead of the right ride, but as the evidence shows the mane could be changed from one side to the other in a few minutes; he had shoes on all of his feet, instead of on his fore feet only, but those on the hind feet had been recently placed there; and there is some evidence that his color was light bay, instead of dark bay, a difference about a matter upon which there may be very honestly many shades of opinion. But in spite of these slight discrepancies the record shows that in the opinion of several persons the horse fully answered the description; and it seems to be uncontradicted that Officer Colbourne was of that opinion. Hammond was

then interrogated and wholly failed to make clear and satis-factory replies.   *First*, he said he owned the horse, had got him in Loudon County, Virginia, from a man named Paxton; then, on being told that it bore the marks of a horse that had been stolen, said that it did not belong to him but to the man he had come down with; and finally, that it did not belong to him but to his uncle Murray Brish, a dealer in Frederick. Hammond was then taken to the station house, where they waited three quarters of an hour.   Hammond told the offi-cers then that the appellant had gone to his boarding house, and offered to take them there.   After walking a block and a half with them, he stopped and said he did not know where it was.   They then went back to the stable, when Hammond said the appellant had probably gone down town to buy bi-cycle fixtures, &c.   Now after all these occurrences it was entirely reasonable that the officers should honestly suspect they had found the stolen horse, and the thieves who had stolen it, and it was their duty under such circumstances to arrest the parties suspected and bring them before a Justice of the Peace for examination.   If the jury found the facts as we have stated them, substantially, the appellees could not be guilty of a false arrest.

Assuming now for the sake of the argument that the arrest was not illegal, did the defendants unreasonably detain the appellant in custody; for if they did, they will still be guilty of false imprisonment.   An officer may detain the suspected party for only such a reasonable length of time as will enable him to carry the accused before a magistrate.   *Twilley* v. *Perkins*, 77 Md. 252; *Kirk* v. *Garrett, supra ;* 2 *Addison on Torts*, p. 150, 7th ed., cited approvingly in *Edger* v. *Burke, supra,* 722.

The duty of the officer in this case was clearly prescribed by the 760th section of the New Charter, which provides that, "all persons arrested in the day time   *   *   shall be taken by the officer making the arrest immediately before the near-est Police Justice for examination," &c.   There was evidence that the appellant was arrested about one o'clock, and arrived

at the Northwestern Police Station fifteen minutes later. Once there the prisoners came within the authority of the Police Magistrate of that station, whose duty it is, to hear and act upon all charges, made against all persons who may be brought before him. His hours for sitting are prescribed by the 630th section, and are, on week days, from 9 A. M. until 12 M. and from 2 P. M. until 4 P. M. If an arrest is made of a person for violation of a city ordinance, or of a statute punishable by fine and not by imprisonment, "during the hours when the Police Magistrates are not at their respective station houses" the officer on duty may release him for the next hearing on depositing the amount of the fine, if· he should be found guilty. *City Charter*, sec. 631. But when the arrest is for an offence punishable otherwise than by fine, and the accused arrives at the station house during the hours when the Police Magistrate is not at the station house, there is nothing to be done, but to detain the person at the station until the next sitting of the magistrate. Under the 751st section New Charter, "No Marshal of Police or any of the Captains of any of the districts or station houses, or any one acting for or under them or any of them shall release any persons committed or confined in any of the station houses for any felony or misdemeanor, but all such persons shall be released only on the order of the committing justice, the Judge of the Criminal Court or one of the members of the board or other lawful process." The appellant was brought promptly to the station and detained until the station justice arrived. He was further detained, by order of the magistrate, until the next morning, at which time the marshal had received the information from Frederick that the persons accused were "all right" whereupon they were discharged.

In view of what has been said, it follows that the Court below committed no error in rejecting the five prayers of the appellant as offered and granting the defendant's second prayer.

There is no appeal from the action of the Court in modifying the plaintiff's second and fifth prayers; the exception does

not include these modifications and cannot therefore be now considered.

*Judgment affirmed.*

(Decided January 15th, 1904.)