MASON *v.* WRIGHTSON

[No. 18, October Term, 1954.]

*Decided November 16, 1954.*

484

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Benjamin H. Foreman* and *W. A. C. Hughes, Jr.,* for appellant.

*J. Kemp Bartlett, III,* and *Robert D. Bartlett,* for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant brought a suit in tort in the Superior Court of Baltimore City against the appellee, a sergeant of the Baltimore City Police Department, for assault and battery and false imprisonment. A jury trial was waived and the case was tried before the Court without a jury. Substantial damages were claimed, but there was no proof of pecuniary loss to the appellant. The trial judge took the view that no actual damage to the plaintiff was established and that any wrong done him was at most a technical wrong; and sitting without a jury, the judge then found a verdict for the defendant upon which judgment was entered. This appeal is from that judgment.

Early in January, 1953, there were a number of serious crimes in Baltimore City, including hold-ups and similar offenses committed by persons armed with deadly weapons, such as pistols or knives. To combat this lawlessness, the Commissioner of Police of Baltimore City issued a general order that the police: "Search for possession of dangerous weapons on all persons coming under police suspicion." The Captain in command of the Northwestern District, to which District the appellee was

attached, issued a written order to his subordinates to carry out the Commissioner's order. As a result, during the months of January and February, 1953, one hundred and twenty-nine taverns in that District were entered by the police and the male patrons were "frisked" or (as euphemistically described) "patted down" in a search for concealed weapons. One of the taverns was a night club known as the Club Tiajuana, on Pennsylvania Avenue. The appellee, in company with several other police officers, entered it at about 1:30 A. M. on Sunday, February 15, 1953. They first informed the manager of what they were going to do, and it was then announced that the male patrons would be "frisked" for concealed weapons.

The appellant, who is an attorney, was seated at a table with four of his friends, two men and two women. An officer came to their table and searched or "patted down" the other two men without apparent objection on their part, but the appellant refused to submit to the "frisking". The officer then called appellee, Sergeant Wrightson, who was in charge of the police squad, and informed him of the appellant's unwillingness to be searched. Sergeant Wrightson then told the appellant to stand up and be searched. Appellant arose from his chair, but informed Sergeant Wrightson that he did not consent to be searched because there was no legal basis for the search. The appellant also informed the Sergeant that he was an attorney and knew most of the people present and saw no need to search them for concealed weapons. The appellant was then searched by Sergeant Wrightson without his consent.

The testimony shows that there was no disorder in the Club Tiajuana, that no crime had ever been committed there, that there had never been any occasion in the history of this establishment requiring the assistance of the police, and that no concealed weapons were found on any of the patrons of the Club at this time.

Appellant contends that he was humiliated and that he has been damaged as a result of an illegal search.

486

The first question for decision is whether the search of his person for concealed weapons was in derogation of his rights.

The Fourth Amendment to the Constitution of the United States, which prohibits unreasonable searches and seizures, is not applicable here since it is a limitation upon the Federal government and not upon the State government. *Griffin v. State,* 200 Md. 569, 572, 92 A. 2d 743, 745; *Lambert v. State,* 196 Md. 57, 62, 75 A. 2d 327, 329; *State ex rel. Beard v. Warden of Md. House of Correction,* 193 Md. 715, 718, 67 A. 2d 236.

Article 26 of the Maryland Declaration of Rights provides: "That all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected persons, without naming or describing the place, or the person in special, are illegal, and ought not to be granted."

It may be conceded that this Article has no direct application in this case because the officers who conducted the search had no warrant at all, but this does not help the appellee's position. Certainly the general order of the Police Commissioner was not a search warrant. As was said in *Miller v. State,* 174 Md. 362, 373, 198 A. 710, 716: "If a general search warrant is condemned, how much more obnoxious must be an authorization to conduct a general and indiscriminate search of persons and property without any warrant."

An officer may make an arrest without a warrant when a misdemeanor is committed in his presence, *Heyward v. State,* 161 Md. 685, 158 A. 897; *Blager v. State,* 162 Md. 664, 161 A. 1; *Callahan v. State,* 163 Md. 298, 162 A. 856; or "may arrest without warrant whenever he has reasonable grounds to suspect that a felony has been committed. *Brish v. Carter,* 98 Md. 445, 449, 57 A. 210, 211. Also, after a lawful arrest is made the officer as an incident thereto may search the offender and seize any evidence of the crime. *Carroll v. U. S.,* 267 U. S. 132, 45 S. Ct.

280, 69 L. Ed. 543; *Agnello v. U. S.*, 269 U. S. 20, 46 S. Ct. 4, 70 L. Ed. 145; *Callahan v. State*, 163 Md. 298, 162 A. 856. None of these well established justifications for a search is present in this case, nor, we think, did the appellant consent to be searched. The search under such circumstances constituted both an assault (and battery) and false imprisonment. See the definitions of assault and of assault and battery in the *Restatement, Torts*, Sections 21 and 18. As to false imprisonment, see *Mahan v. Adam*, 144 Md. 355, 365, 124 A. 901, 904, in which this Court defined it as "* * * the unlawful restraint by one person of the physical liberty of another and, as here used, the word false seems to be synonymous with unlawful. To constitute a case of false imprisonment there must be some direct restraint of the person; but to constitute imprisonment in such case, confinement in jail or prison is not essential. Any exercise of force, or threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment; the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and the good or evil intention of the defendant does not excuse or create the tort. * * * Or, as said by this Court, any deprivation by one person of the liberty of another without his consent, whether by violence, threat or otherwise, constitutes an imprisonment, and if this is done unlawfully, it is false imprisonment without regard to whether it is done with or without probable cause."

When a peace officer goes beyond the scope of the law he may become liable civilly and is not shielded by the immunity of the law. *Roddy v. Finnegan*, 43 Md. 491. The fact that the appellee was acting under orders of a superior officer does not relieve him of civil liability for his actions which are illegal and beyond the scope of duty. 46 *Corpus Juris* 1043.

The Bouse Act, Code (1951), Article 35, Section 5, now permits the use of evidence obtained through an

illegal search or seizure in the prosecution of any person for unlawfully carrying a concealed weapon, and does not thereby violate the Fourteenth Amendment to the United States Constitution by admission of such evidence. *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280, 346 U. S. 545, 74 S. Ct. 280, 98 L. Ed. 207. However, this Act does not enlarge the power of an officer to conduct searches which he could not otherwise make. The fact that evidence is admissible does not validate the means by which it was obtained. "The Act offers to offending searchers and seizers no protection or immunity from anything—be it civil liability, criminal liability or disciplinary action." *Salsburg v. State,* 346 U. S. 545, 74 S. Ct. 280, 98 L. Ed. 207.

Though the officers, under Code (1951), Article 2B, Section 179, had authority to enter the Club Tiajuana and conduct a search of the premises without a warrant, this Act did not authorize, or purport to authorize, police officers to search the patrons found therein.

There was some suggestion in a colloquy in the lower court that there should be some relinquishment of constitutional guarantees and submission to police search in order to aid in such a campaign against major crime as the police were then conducting. Whatever merit there may be to such a suggestion, it must rely for its efficacy upon voluntary conduct. To deny recovery in a case such as this to one who refuses to waive his right of immunity from unwarranted search would be to take the first step down the path leading to the destruction of the right.

The remaining question is whether the appellant is entitled to recover any damages, and if so, how much. It would be very difficult, if not impossible, to estimate the appellant's damages on a pecuniary basis, and there was no proof thereof. Though there are exceptions to this rule, as in conspiracy cases, where damage is the gist of the action or an essential element of the tort (*Horn v. Seth,* 201 Md. 589, 95 A. 2d 312), we do not regard this case as falling within such exceptions, but

as coming within the rule recognized in *Coca-Cola Bottling Works v. Catron*, 186 Md. 156, 164, 46 A. 2d 303, 306; and *Salisbury Coca-Cola Bottling Co. v. Lowe*, 176 Md. 230, 4 A. 2d 440, under which, as was said in *Horn v. Seth*, 201 Md. 589, 597, 95 A. 2d 312, 316, in referring to these cases, "* * * if damage is shown in a tort action, the defendant is not entitled to a directed verdict merely because the monetary amount is not proven, even though the defendant may be entitled to an instruction, if requested, limiting recovery to nominal damages." We think that the humiliation incidental to the search here made does show some damage. As was said in *Baltimore v. Appold*, 42 Md. 442: "It is well settled that every injury to the rights of another imports damages, and if no other damage is established, the party injured is at least entitled to a verdict for nominal damages."

For these reasons the judgment below should be reversed and judgment rendered for the plaintiff for nominal damages and costs.

> *Judgment reversed; judgment for the plaintiff for one cent damages and costs.*