Carolyn V. HENDERSON, Plaintiff

v.

CLAIRE'S STORES, INC., Defendant.

Civil Action No. AMD 08–1317.

United States District Court,
D. Maryland.

April 8, 2009.

Carolyn V. Henderson, Baltimore, MD, pro se.

Jason Sean Garber, Reger Rizzo and Darnell LLP, Baltimore, MD, for Defendant.

## MEMORANDUM OPINION
and ORDER

ANDRÉ M. DAVIS, District Judge.

In this removed diversity action, Carolyn Henderson ("Henderson"), a pro se litigant, has sued Claire's Stores, Inc. ("Claire's") for defamation, false light invasion of privacy, false imprisonment, fraud, and intentional infliction of emotion distress. Her claims arise from a single visit Henderson made to one of defendant's retail stores to purchase inexpensive jewelry. In her complaint, she demands $900,000 in compensatory damages and $2,250,000 in punitive damages. On March 30, 2009, the court held a hearing on open motions. For the reasons stated below, the court grants the motions in part and denies them in part, and permits further discovery.

### I.

The facts must be viewed, as always, most favorably to the non-movant, here the plaintiff. (Plaintiff, proceeding pro se, was permitted to supplement her version of the material facts at the hearing.) On June 30, 2005, at approximately 4:00 p.m., Henderson went shopping at Claire's in the Perryville Outlet Center in Perryville, Maryland.* She was prohibited from entering the store with her small dog, which she was carrying in a large zippered handbag. After securing her dog outside the store, she entered the store and selected approximately 200 items (each, apparently, on sale for fifty-cents) and proceeded to the sales counter to pay for her purchases. At the sales counter, Tiffany Whelan ("Whelan"), an Assistant Manager at Claire's working as the cashier, asked Henderson to wait until after she helped customers with fewer items complete their purchases. Henderson waited, leaving the store once to remove her dog from her car and secure him just outside the store's entrance.

After helping the other customers, Whelan turned her attention to Henderson. Before ringing up Henderson's purchase, Whelan noticed that Henderson had taken several of the slatwall hooks off the wall of the store and told her that the slatwall hooks were not for sale. Henderson explained to Whelan that she did not want to purchase the hooks, and instead left the jewelry on the hooks to make it easier for her, the cashier, to ring up her purchase. Henderson added that in the past, other Claire's cashiers at other locations had said that this method made it easier to ring up multiple identical items. Whelan disagreed and took the individual jewelry

---

* Henderson is a non-practicing member of the Pennsylvania Bar and an African American. The store personnel who handled her transaction were Caucasian. Thus, she suspects that the treatment she received was race-based. Nevertheless, she has not asserted a racial discrimination claim.

The court notes that there have been numerous breakdowns in discovery practice and in other procedural aspects of this case. For example, Henderson filed the action in state court on June 29, 2006, just one day before the statute of limitations would have barred her claims for slander. However, she did not serve process until nearly two years later on April 28, 2008. Defendant timely removed the case (counting from the time of service) and, in any event, despite the prohibition on removal of cases on the basis of diversity of citizenship after one year, 28 U.S.C. § 1446(b), Henderson did not file a timely motion for remand as permitted by 28 U.S.C. § 1447(c). In addition, Henderson did not provide timely or complete answers to discovery requests, and defendant failed to include three affirmative defenses in its original answer.

For the reasons stated on the record, the court will permit defendant to amend its answer and shall allow an additional period of discovery (including the deposition of plaintiff, if defendant so desires), followed by supplemental motions for summary judgment if appropriate.

holders off of the slatwall hooks before ringing up the transaction.

While processing the items, Whelan "accused [plaintiff] of stealing jewelry" because several jewelry holders were missing their jewelry. According to Henderson, jewelry often falls off its holders and this was not an aberration. In any event, Whelan called a mall security guard ("Officer Moore"), who came to the scene at her request to investigate the situation. Henderson denied stealing anything and showed Officer Moore that she had no pockets or a purse where she could hide things. He agreed with Henderson and Whelan completed ringing up her purchases.

Next, Henderson gave Whelan her credit card and driver's license. Whelan took a long time examining the license and credit card, and then asked if the driver's license belonged to Henderson. Henderson said yes. It is undisputed that the license photo had been taken (and the license issued) within the preceding six months. Henderson insists that her appearance had not changed much from the day the photo was taken, and that, specifically, her hair style was exactly the same as it was when the photo was taken. Nevertheless, Whelan insisted that the picture on the license did not look like Henderson.

Instead of accepting the payment, Whelan "accused [plaintiff] of having a stolen credit card and bogus driver's license" and "claimed that the picture on the driver's license did not look like [plaintiff.]" Henderson, by now frustrated by the entire ordeal, asked for that her documents be returned so that she could abandon her purchases and depart. Whelan refused to return Henderson's credit card or driver's license until they were verified by mall security. She called Officer Moore, who returned to the store in about ten minutes or so, carefully looked over the cards, and found them valid. (Officer Moore evident-ly had no hesitation in concluding that the photograph on the driver's license was of plaintiff.) Apparently, he also checked for outstanding warrants; Henderson had none. Henderson paid for her items and completed her purchase.

Henderson was then free to leave the store, but she stayed because she believed that Whelan had overcharged her by more than one hundred dollars. At the time of her purchase, Henderson told Whelan that she only wanted to buy "clearance" items, but Whelan refused to let her see her receipt until she paid. Henderson reviewed her receipt after the sale had been completed and maintained that she was, in fact, overcharged. She wanted the mistake corrected, and she requested that Officer Moore stay and assist her in seeking a refund. Officer Moore remained with Henderson, telling her that she would need to wait for a store manager to resolve the situation. While they were waiting, Officer Wood, a law enforcement officer, joined them.

A store manager arrived approximately one hour later and worked with Henderson to review her purchase. They determined that she was overcharged by approximately $125; Henderson was refunded the full amount. Henderson requested an original receipt of her purchase and refund transactions, but the store manager refused. To resolve the problem, Officer Moore photocopied the receipt for Henderson in his office. After receiving her refund and her receipt, Henderson left the store.

Henderson reported the occurrence to Claire's headquarters. A few weeks later, she met with a representative from Claire's. This representative apologized for her experience and provided Henderson with the original receipt from her transaction.

## II.

Plaintiff alleges two counts of slander. The first count is based on Whelan's allegation that plaintiff may have "[stolen] jewelry [which was made] in the presence of several customers that were waiting in the line that had formed while Whelan went through the items that [plaintiff] was attempting to purchase." The second count is based on Whelan's statement that effectively "accused [plaintiff] of having a stolen credit card and bogus driver's license."

### A.

Defendant argues that the defamation claims are barred by limitations. Under Maryland Law, the statute of limitations is one year. MD.CODE, CTS. & JUD. PROC. § 5–105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."). This limitation is strictly construed. *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 635 A.2d 394 (1994). Defendant's argument lacks merit, however, because plaintiff filed this action within one-year of the accrual of the claim. In fact, Henderson filed her initial complaint exactly one day before the deadline.

■ Defendant also argues that Henderson acted unreasonably in failing to serve process for two years. Although this two year gap is undisputedly lengthy, it does not affect analysis of the limitations defense. Defendant's remedy for this inexplicable delay was to file a motion to dismiss in the state court pursuant to Maryland Rule 2–507(b) ("An action against any defendant who has not been served or over whom the court has not otherwise acquired jurisdiction is subject to dismissal as to that defendant at the expiration of 120 days from the issuance of original process directed to that defendant."). Defendant chose not to do so but instead filed an answer and removed the case to this court.

Indeed, there is precedent in this district for the application of Maryland Rule 2–507 to cases removed to this court based on pre-removal conduct. *Carden v. Evenflo Co., Inc.*, 2003 WL 22056644 (D.Md. Aug. 28, 2003) (Motz, J.) (citing *Eccles v. National Semiconductor Corp.*, 10 F.Supp.2d 514, 519 (D.Md.1998) (Young, J.)); *but see Lambright v. Rhone–Poulenc Rorer Pharmaceuticals, Inc.*, 1995 WL 375589 (D.Md. June 19, 1995) (Hargrove, J.). I need not determine whether application of the state procedural rule is warranted as defendant failed to invoke the rule as a ground for dismissal.

### B.

■ Since Henderson is not a public figure, her slander claims require proof of the following elements: (1) that the defendant made a defamatory communication, *i.e.*, that its employee communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement; and (4) that the plaintiff suffered harm. *Shapiro v. Massengill*, 105 Md.App. 743, 661 A.2d 202, 216 (1995).

■ Henderson satisfies the first element since Whelan's statements were defamatory per se. Under Maryland law, a statement is defamatory per se when the injurious character of the words is self-evident. *Metromedia, Inc. v. Hillman*, 285 Md. 161, 400 A.2d 1117 (1979); *American Stores Co. v. Byrd*, 229 Md. 5, 181 A.2d 333, 337 (1962) ("Consistently this Court has held that words which falsely charge a person with or impute to him the commission of a crime for which he is liable to be prosecuted and punished are actionable per se."). Whether any specific statement constitutes defamation per se or

defamation per quod presents an issue of law. *Gooch v. Maryland Mechanical Systems, Inc.,* 81 Md.App. 376, 567 A.2d 954, 961 n. 8 (1990). Both of Whelan's statements are defamatory per se because they unambiguously accused plaintiff of being a thief.

The second element of defamation is undisputed because defendant does not assert that Whelan's statements were true. Additionally, there is no evidence that Henderson stole anything from Claire's, or that her credit card or driver's license were stolen or falsified in any way.

The third element is fault, and here the two claims must be addressed separately. Generally speaking, fault may be based on either negligence or constitutional malice. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *see also* Restatement (2d) Torts § 580B (1975); *see* RESTATEMENT (2D) TORTS § 580B (1975). Constitutional malice, sometimes called actual malice, *Batson v. Shiflett,* 325 Md. 684, 602 A.2d 1191 (1992), is established when the plaintiff shows that the defendant published the statement (1) with reckless disregard for its truth or (2) with actual knowledge of its falsity. *Id.* A showing of malice "involves proof of a high degree of awareness of . . . probable falsity, such that the defendant entertained serious doubts as to the truth of his publication." *Marchesi v. Franchino,* 283 Md. 131, 387 A.2d 1129, 1132 (1978). Negligence requires only that the defendant failed to act as a reasonable person under the circumstances.

■ The court is persuaded that, as a matter of law, Whelan did not act culpably when she inquired about the empty jewelry cards in Henderson's baskets. The missing jewelry provided Whelan with a facially plausible basis to ask Henderson about the jewelry's whereabouts. Whelan had no obvious way to know that the jewelry fell off the missing cards, and it is logical that a store clerk would conduct a brief investigation (however awkward it may seem in hindsight) to find missing merchandise. And that is all that happened here. Accordingly, summary judgment is granted regarding Henderson's first defamation claim.

■ Henderson's second defamation claim survives summary judgment, however. There is sufficient evidence to create a genuine dispute of material fact whether Whelan acted negligently, or possibly even with constitutional malice, when she accused Henderson of possessing a stolen driver's license and credit card. Viewing the facts (and the reasonable inferences available to be drawn from them) most favorably to Henderson, there is scant, if any, evidence to support a finding of reasonableness as to Whelan's statements.

Henderson insists that she strongly resembled the photo on her driver's license. At the time of the occurrence in June 2005, Henderson's driver's license photo had been taken by state authorities within the preceding six months, and according to Henderson, she looked identical to the photo on her license at the time of her purchase. Additionally, the license contained all of the proper components of a Maryland license, indicating that it was not fraudulent. Importantly, Officer Moore had no difficulty in concluding that the license presented by plaintiff was her own. In sum, the license provided ample support for Henderson's ownership and proper use of the credit card.

Whelan's actions support a finding of negligence or possibly malice. Officer Moore's so-called "verification" that the documents were authentic consisted simply of comparing the photo on Henderson's license to Henderson. Summoning security did not provide Whelan with any additional expertise or information. Furthermore, making Henderson wait for the

guard to arrive was embarrassing to her. It is unclear to the court why Whelan did not call the credit card company instead, since not only could the issuer actually verify whether Henderson had a valid credit card, but also, that type of action would have been quick and far less humiliating for Henderson. Accordingly, the record presents an issue of genuine material fact regarding whether Whelan acted negligently or with actual malice when she accused Henderson of possessing and attempting to use false identity documents, i.e., as having stolen them.

■■■ The final element for slander is damages. Here, since the statement in question qualifies as defamatory per se, the law presumes that the reputation of the person about whom it was published has been injured. Thus, Henderson does not need to show the amount of damage resulting from the defamation in order to survive summary judgment. Under Maryland law, emotional distress can be sufficient to recover compensatory damages. *Hearst Corp. v. Hughes,* 297 Md. 112, 466 A.2d 486, 487 (1983). Henderson states that she was embarrassed and that she suffered mental anguish and personal humiliation. She did not claim any monetary damages from the alleged defamation, nor did she seek any medical or psychological treatment for any alleged injury of condition claimed to have been a result of the incident, but such proof is not necessary. If she can prove actual malice at trial, then Henderson is entitled to the presumption of harm. *Hanlon v. Davis,* 76 Md.App. 339, 545 A.2d 72, 80 (1988); *Hearst Corp.,* 466 A.2d at 493. If Henderson can show only negligence, then she must prove actual damages. *Hearst Corp.,* 466 A.2d at 487.

■■■ To be sure, Henderson's damages are limited. There are no actual damages here because the store fully reimbursed Henderson and Henderson did not seek any medical or emotional treatment to help her recovery from her experience. Accordingly, Henderson suffered no financial loss. She can, however, seek nominal compensatory damages for emotional damages. Moreover, under Maryland law, if Henderson is awarded nominal compensatory damages, she may also seek punitive damages. *Heinze v. Murphy,* 180 Md. 423, 24 A.2d 917, 921 (1942); *Shabazz v. Bob Evans Farms, Inc.,* 163 Md.App. 602, 881 A.2d 1212, 1234 (2005) (explaining that nominal compensatory damages supports an award of punitive damages but non-compensatory nominal damages, i.e., merely a technical invasion of plaintiff's rights, does not); *Bouie v. Rugged Wearhouse, Inc.,* 2007 WL 430752 (D.Md. Jan. 31, 2007).

### C.

Defendant also argues that even if Henderson was defamed, Whelan's statements are protected by a common law qualified privilege. In support of this assertion, defendant cites *Rabinowitz v. Oates,* 955 F.Supp. 485, 488 (D.Md.1996), and *Mareck v. Johns Hopkins University,* 60 Md.App. 217, 482 A.2d 17 (1984). But both cases are distinguishable from this case because they relate specifically to an employer-employee relationship, and that relationship does not exist here. *See McDermott v. Hughley,* 317 Md. 12, 561 A.2d 1038, 1046–47 (1989) (citing multiple examples where an employer-employee relationship gives rise to qualified privilege).

\* \* \* \* \* \*

In sum, Henderson received what many would view as shabby treatment and she was called a thief by a retail cashier in the presence of other customers, none of whom, apparently, knew, or were familiar with plaintiff. In other words, the occurrence unfolded in the presence of strangers, and constituted what many would

clearly regard as a regrettable but fleeting unpleasantness. Plaintiff asserts that she suffered humiliation and embarrassment, but the record shows she suffered no real harm to her reputation in any relevant community or any financial loss. Nevertheless, she has projected sufficient evidence under state law to survive summary judgment on her second claim for slander. Accordingly, subject to defendant's opportunity to file a supplemental motion for summary judgment, *see supra* n. *, she is entitled to have a jury assess her claim.

### III.

■ Henderson's claim for false light invasion of privacy is factually identical to her claim for defamation. She claims that she suffered injury from a false light invasion of privacy when Whelan stated that Henderson stole merchandise and that Henderson had a fake or stolen credit card and driver's license. Under Maryland law, to prove a claim of false light invasion of privacy, a plaintiff must show (1) that the defendant gave publicity to a matter that places the plaintiff before the public in a false light; (2) that a reasonable person would find that the false light in which the other person was placed highly offensive to a reasonable person; and (3) that the defendant had knowledge of or acted with reckless disregard as to the falsity of the publicized matter and the false light in which the defendant placed the plaintiff. *Mazer v. Safeway Inc.*, 398 F.Supp.2d 412 (D.Md.2005) (citing *Bagwell v. Peninsula Regional Medical Center*, 106 Md.App. 470, 665 A.2d 297, 318 (1995)).

To satisfy the first element, disclosure of the private fact must be sufficiently broad such that the fact becomes one of public knowledge. *Id.; see also Holt v. Camus*, 128 F.Supp.2d 812, 817 (D.Md.1999). Concomitantly, it is not an invasion of privacy to communicate a fact about someone's private life to a single person or even to a small group of people. *Pemberton v. Beth-*

*lehem Steel Corp.*, 66 Md.App. 133, 502 A.2d 1101, 1118 (1986); *Mazer*, 398 F.Supp.2d at 431 (citing the RESTATEMENT (SECOND) OF TORTS § 652D, cmt. a. (1977)).

■ Here, Henderson failed to provide any evidence, and there appears to be none, that Whelan's statements were made to the public at large. There is no allegation that Whelan broadcasted insults about Henderson over a loudspeaker or even that she insulted Henderson in a voice loud enough to permit everyone in the store to hear. Instead, Whelan made her statements within earshot of a small group of individuals who may or may not have heard part or all of her statements. No reasonable juror could possibly think that this situation even partially fulfills the scope required for a false light claim. *Mazer*, 398 F.Supp.2d at 431–32 (granting summary judgment on the basis that a small group of people does not qualify as "the public" as required for the first element of a false light invasion of privacy claim). Accordingly, the motion for summary judgment is granted on the false light invasion of privacy counts.

### IV.

■ Henderson also seeks damages for false imprisonment. She alleges that Whelan deprived her of her liberty to leave the store by refusing to return her credit card and driver's license. Under Maryland law, the elements of a false imprisonment claim are "a deprivation of the liberty of another without his consent and without legal justification." *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95, 112 (2000). Maryland law also requires that there is "some direct restraint of the person." *Mason v. Wrightson*, 205 Md. 481, 109 A.2d 128, 131 (1954); *Mahan v. Adam*, 144 Md. 355, 124 A. 901, 904–05 (1924); *Johnson v. United Parcel Services*, 722 F.Supp. 1282, 1284 (D.Md.

1989) (holding that false imprisonment requires the use or threat of force and that the restraint from an individual's fear of losing a job is insufficient as a matter of law for such a claim).

█ This claim survives summary judgment by the thinnest of margins because there is a genuine issue of material fact regarding whether Claire's deprived Henderson of her liberty, however briefly, without justification. Although Henderson was not physically harmed or threatened, a jury could reasonably find that Whelan effectively deprived Henderson of her liberty, without justification, when she refused to return plaintiff's driver's license and credit card until Officer Moore arrived on the scene and "verified" their authenticity. Obviously, Henderson could not leave the store and (lawfully) drive away without her driver's license. For present purposes, the court concludes that Whelan's detention of Henderson's license satisfied the "force" element.

Henderson clearly did not consent to wait for Officer Moore. In fact, after being called a thief and a liar, Henderson reasonably decided that she preferred to abandon her purchases and leave the store. She asked Whelan to return her credit card and driver's license, but Whelan refused, asserting that they were fakes and/or stolen.

Lastly, Whelan had no discernable legal justification to keep Claire's credit card and driver's license. Once Henderson decided that she wanted to abandon her purchase and leave the store, Whelan should have immediately returned her credit card and driver's license. There was no legitimate reason, on the record developed here, for Whelan to act otherwise. For these reasons, defendant's motion for summary judgment is denied with respect to the false imprisonment claim.

V.

█ Henderson alleges that Whelan intentionally misrepresented the cost of the items that she purchased at Claire's. Under Maryland law, a fraudulent misrepresentation or deceit claim has five elements. The plaintiff must show that the defendant (1) made a false representation; (2) knowingly or with reckless indifference to the truth; (3) for the purpose of defrauding the plaintiff; (4) that the plaintiff reasonably relied on the misrepresentation; and (5) that the Plaintiff suffered damage directly resulting from the fraudulent misrepresentation. *Martens Chevrolet v. Seney*, 292 Md. 328, 439 A.2d 534, 537 (1982).

█ Here, Henderson has failed to produce evidence to support the existence of a genuine dispute of material fact regarding the element of damages. The facts demonstrate that Henderson was overcharged by Whelan. Nevertheless, the store refunded the overcharge in full, a fact that she concedes. Henderson also wanted a receipt for her purchase, and she was provided with one, albeit initially not the original receipt. Thus, Henderson has no possible damages to claim. Accordingly, the motion for summary judgment on the issue of intentional misrepresentation is granted.

VI.

█ Finally, Henderson sued for intentional infliction of emotion distress ("IIED"). She notes that she had to wait at the store for hours before receiving her refund, and when she did receive it, she was not provided with an explanation. Henderson further alleges that her dog had to wait outside in extreme heat. Under Maryland law, a claim of IIED has four elements: (1) intentional or reckless conduct; (2) that is extreme and outrageous; and (3) that causes emotion dis-

tress; (4) that is severe is nature. *Manikhi v. Mass Transit Admin.*, 360 Md. 333, 758 A.2d 95, 113 (2000) (citing *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977)).

 Henderson has not generated a genuine dispute of material fact regarding the second element of IIED. Generally speaking, Maryland courts disfavor this tort and have limited recovery for IIED claims to the most extreme and unusual circumstances. *See, e.g., Hrehorovich v. Harbor Hosp. Center, Inc.*, 93 Md.App. 772, 614 A.2d 1021, 1034 (1992). For conduct to qualify as extreme and outrageous conduct, it must go "beyond all possible bounds of decency," or be "atrocious" or "utterly intolerable in a civilized community." *Harris v. Jones*, 281 Md. 560, 380 A.2d 611, 614 (1977). Here, the store required Henderson (and her dog) to wait for a few hours in order to receive a refund on a specific transaction. As a matter of law, those actions do not remotely satisfy the extreme and outrageous element of IIED.

### VII.

For the reasons set forth above, defendant's motion for summary judgment (Paper No. 15) is GRANTED IN PART AND DENIED IN PART. Furthermore, for the reasons stated on the record and herein, the motion to compel and extend deadlines for discovery (Paper No. 12) is GRANTED IN PART AND DENIED AS MOOT IN PART; the motion to amend/correct answer (Paper No. 18) and the amended motion to amend (Paper No. 20) are GRANTED AND DEFENDANT SHALL FILE AN ANSWER ON OR BEFORE APRIL 13, 2009; the motion to withdraw confidential information (Paper No. 19) is DENIED AS MOOT.

The parties may conduct further discovery through and including May 25, 2009, and may file supplemental motions for summary judgment on or before June 15, 2009.

The Clerk shall mail a copy of this Memorandum Opinion and Order to plaintiff.